IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 10, 2002

## CHICO LOPEZ CHIGANO v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 37812       Richard Baumgartner, Judge**

_____

**No. E2002-00536-CCA-R3-PC**
**April 2, 2003**
_____

The petitioner, Chico Lopez Chigano, appeals the trial court's denial of his petition for post-conviction relief. In this appeal, he asserts that he was denied the effective assistance of counsel at trial. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Mark E. Stephens, District Public Defender (on appeal); and Timothy M. McLaughlin (on appeal) and John Halstead (at trial), Assistant Public Defenders, for the appellant, Chico Lopez Chigano.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Robert L. Jolley, Jr., Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

In January 1980, the petitioner was convicted of aggravated robbery, robbery, and aggravated assault. On direct appeal, this court affirmed the convictions. See State v. Chico Lopez Chigano, Nos. 674, 861 (Tenn. Crim. App., at Knoxville, Oct. 25, 1982). In July of 1989, the petitioner filed a petition for post-conviction relief, which was dismissed as barred by the statute of limitations. See Chico Lopez Chigano v. State, No. 03C01-9405-CR-00166 (Tenn. Crim. App., at Knoxville, Jan. 9, 1995). The petitioner appealed the dismissal and this court reversed, finding that the petition was not time-barred. See id. Upon remand, the trial court conducted an evidentiary hearing and concluded that the petitioner was not entitled to relief. The petitioner's motion for rehearing was denied.

The petitioner's convictions arose from the 1979 robbery of Doris' Deli in Knoxville. This court summarized the facts as follows:

On June 11, 1979, at approximately 7:00 to 7:30 p.m., two men came into a deli and robbed the owner by taking over four hundred dollars ($400.00) from the cash register. One of the men, who was later identified as the defendant, took the purse of a woman customer, which contained two hundred dollars ($200.00). A male customer refused to surrender his wallet, and the defendant beat him with a pistol. The other man hit the customer with a stool causing the customer to lose consciousness.

The owner of the delicatessen and the two customers identified the defendant as one of the men who committed the crimes.

The defendant testified that he was not at the deli at the time stated by the state's witnesses and denied he committed these crimes. The defendant called other witnesses to support his alibi defense.

Chigano, Nos. 674, 861, slip op. at 1.

At the evidentiary hearing, the petitioner claimed that his trial counsel failed to adequately investigate the crime and failed to adequately communicate with him prior to trial. He contended that trial counsel spent no more than fifteen minutes discussing the case with him. The petitioner specifically alleged that trial counsel was ineffective by failing to file a motion to suppress Doris Johnson's identification of him, which, he claims, was conducted in violation of his right to counsel. He insisted that he had asked to speak with an attorney before the lineup took place and was tricked into signing a waiver of his right to counsel. The petitioner testified that the lineup was composed of individuals who were much taller, heavier, and with lighter complexions and more facial hair. He claimed that the trial court failed to provide an instruction on eyewitness identification and his trial counsel failed to make a special request for the instruction.

The petitioner also contended that trial counsel was ineffective for failing to seek suppression of Ollie Ruggles and Lowell Drummer's identification of him, which took place at the preliminary hearing. According to the petitioner, the identification procedure was "highly suggestive" because he was wearing prison attire. The petitioner claimed that his trial counsel deprived him of the right to testify by interrupting his statement about a prior altercation with Sherry Netherton, a witness for the state. He testified that approximately one month before the robbery, Ms. Netherton had accused him of stealing a large bag of dog food from a grocery store where she worked. The petitioner stated that Ms. Netherton had used racial slurs during the argument. It was his contention that the earlier altercation motivated both Ms. Netherton and her co-worker Donna Stout, another state witness, to testify against him at trial.

During cross-examination, the petitioner acknowledged that trial counsel thoroughly cross-examined Ms. Johnson regarding her pretrial identification. He admitted that it was trial counsel who first emphasized the differences in the height and weight of other members of the lineup and

conceded that trial counsel had pointed out that Ms. Ruggles and Drummer could not identify him from a photographic array.

Trial counsel, who had practiced primarily criminal law for twelve years at the time of the petitioner's trial, testified that he graduated first in his law school class, was a founding member of the Tennessee Association of Criminal Trial Lawyer's Association, and had written several law review articles relating to the criminal law. While unable to recall much of the petitioner's trial, trial counsel stated that the focus of his investigation and defense was to discount the identification by Ms. Johnson and to establish an alibi. He testified that he had talked with the petitioner many times about trial strategy and was "absolutely" prepared for trial. He stated that he placed special emphasis on the fact that no state witness had testified that the perpetrator had a gold tooth, as did the petitioner.

Trial counsel explained that he did not ask for an evidentiary hearing regarding the propriety of the lineup prior to trial because he had been assured that he would be permitted to conduct his own lineup during the course of the trial. Although he did not actually utilize a lineup during trial and could not recall why he had chosen not to do so, trial counsel contended that a motion to suppress the results of the lineup would not have been successful. It was his recollection that because Ms. Johnson was so positive in her identification of the petitioner, he chose not to reinforce her identification with an in-trial procedure. Trial counsel could not recall whether the petitioner was identified by witnesses for the state at the preliminary hearing; in fact, he could not remember whether a preliminary hearing had been held. He was also unable to recall whether the petitioner had informed him about the prior altercation with Ms. Netherton.

At the conclusion of the evidentiary hearing, the trial court observed as follows:

> [Trial counsel] further testified that while he was prepared to ask the court for another line-up before trial, that he abandoned this idea after having the opportunity to again talk with Ms. Johnson, the principle victim, on the morning of trial. He was afraid that any new line-up would further incriminate his client and felt that the best strategy was to defend on the basis that they had identified the wrong individual. After hearing this explanation, this court was of the opinion that this was sound trial strategy by [trial counsel]. He thoroughly cross-examined all the witnesses with respect to their identification of [the petitioner], including establishing that Ms. Lauderdale was subsequently employed by Ms. Johnson, and was able to display for the jury the Petitioner's gold tooth and scar. The jury, as was their prerogative, concluded that the testimony of the witnesses established that [the petitioner] was the person who had committed the robbery and assault. There is no merit to [the petitioner's] complaints as it regards the identification issues or use of the line-up evidence.

Although the trial court made no specific finding with regard to the petitioner's allegations that trial counsel deprived him of the right to testify regarding the prior altercation with Ms. Netherton, it did

find that trial counsel "performed admirably" in defending the petitioner. The trial court determined that trial counsel had "fully investigated and prepared the case for trial, and presented a vigorous defense at trial," performing "well above the standards established by applicable case law."

In this appeal, the petitioner continues to assert that his trial counsel was ineffective by failing to seek suppression of the identifications made by Ms. Johnson, Ms. Ruggles, and Drummer. In addition, he asserts that trial counsel deprived him of the constitutional right to testify by preventing him from testifying about a prior altercation with Ms. Netherton.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The trial court fully accepted the explanation of trial counsel as to the lack of a pretrial challenge to the identification made by Ms. Johnson. To choose not to risk the reinforcement of an earlier identification with an in-trial lineup does, in our view, qualify as a legitimate tactical decision. The evidence does not preponderate against the finding of the trial court that trial counsel's performance in that regard was not deficient.

Moreover, the petitioner has failed to establish that a motion to suppress would have been successful, a prerequisite for the grant of relief. In Neil v Biggers, the United States Supreme Court established a two-part analysis to assess the validity of a pre-trial identification. 409 U.S. 188, 198-99 (1972). First, the court must determine whether the procedure used to obtain the identification was unduly suggestive. Id. at 198. A violation of due process has occurred if the identification procedure is so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Id. If the court finds that the identification procedure was unduly suggestive, the court must determine whether, under the totality of the circumstances, the identification is nevertheless reliable. Id. at 199; State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). This standard was adopted by our supreme court in Bennett v. State, 530 S.W.2d 511, 512-15 (Tenn. 1975). A finding that the pre-trial identification was unreliable will also require the exclusion of a subsequent in-court identification by the same witness. State v. Philpott, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Factors to be considered in determining whether a violation of due process has occurred are

(1) the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness' degree of attention at the time of the crime;
(3) the accuracy of the witness' prior description of the criminal;
(4) the level of certainty demonstrated at the confrontation; and
(5) the time elapsed between the crime and the confrontation.

Neil, 409 U.S. at 199; see also Philpott, 882 S.W.2d at 400.

The record establishes that Ms. Johnson, Ms. Ruggles, and Drummer each testified at trial that they had a good opportunity to observe the petitioner during the robbery in good lighting and at close range. Ms. Johnson testified that the perpetrators were inside the deli for approximately ten minutes. She also stated that she recognized the defendant as one of the perpetrators because he had been a customer at the deli prior to the robbery. Each of the three witnesses testified that their attention was focused on the perpetrators during the entire course of the robbery. Despite vigorous cross-examination by trial counsel, each professed certainty that the petitioner was one of the two

perpetrators. Under these circumstances, it is our view that a motion to suppress the pretrial identifications would not likely have been successful. In consequence, the petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure to seek suppression.

The petitioner next contends that trial counsel deprived him of the right to testify by interrupting his testimony regarding the prior altercation with Ms. Netherton. The state asserts that the claim is without merit because the petitioner did, in fact, testify on his own behalf.

It is well established that a criminal defendant has a constitutional right to give testimony under both the state and federal constitutions. Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). Article I, section 9 of the Tennessee Constitution has been interpreted to require that "in all criminal prosecutions the accused has the right to testify as a witness in his own behalf and to be represented by counsel." Id. (citing State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976)). In Rock v. Arkansas, 483 U.S. 44, 50 (1987), the United States Supreme Court declared that the right of a criminal defendant to testify in his own behalf was essential to the due process of law. Because the right to testify is fundamental, it may only be waived by the defendant. Momon, 18 S.W.3d at 161 (citing Jones v. Barnes, 463 U.S. 745 (1983); State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998); Vermilye v. State, 754 S.W.2d 82, 88 (Tenn. Crim. App. 1987)).

> The following exchange took place during the petitioner's direct examination:
> [Defense Counsel]: And then were there any other occasions, before the police came over to your job on July the 11th, that anybody mentioned [the robbery] to you?
> [Petitioner]: Well, to my knowledge, I don't really think--I'm just talking for myself, I don't think this had anything to do with this, but all of this must have happened out in the IGA Store, which I told you about.
> [Defense Counsel]: Well, we will get to that in a second. No one else had--after you saw the two gentlemen, one of them you worked with, down at the fish market on McCalla, you didn't hear anymore from anybody until the officers came over to your job on July the 11th?
> [Petitioner]: No, sir.

At the evidentiary hearing, the petitioner testified that he would have fully described the altercation with Ms. Netherton had he been permitted to continue. He contends that this testimony would have established a motive for Ms. Netherton and, by implication, Ms. Stout to testify against him. Initially, the petitioner has failed to establish how the actions of his trial counsel unilaterally deprived him of the right to testify. See Gregory Morgan v. State, No. 03C01-9611-CR-00404 (Tenn. Crim. App., at Knoxville, Jan. 15, 1999). Further, the petitioner was unable to persuade the trial court that had he been able to explain his past relationship with Ms. Netherton, the verdict would have been different. Again, the proof presented at the evidentiary hearing does not preponderate against the finding by the trial court that the petitioner is not entitled to relief.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE