IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 24, 2009

**ROBERT M. LINDER v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Blount County**
**Nos. C-16859 and C-14001      Michael H. Meares, Judge**

_____

**No. E2008-00693-CCA-R3-PC - Filed August 13, 2010**

_____

Petitioner Robert M. Linder was convicted of especially aggravated sexual exploitation of a minor following a bench trial in the Blount County Circuit Court. The trial court sentenced him to 12 years, and on appeal this Court modified his sentence to 11 years. He then filed a petition for post-conviction relief and, due to irreconcilable differences with his appointed counsel, has proceeded through the post-conviction process pro se. After an evidentiary hearing, the post-conviction court denied relief. Petitioner now appeals, alleging numerous errors in his conviction and subsequent appeals as well as ineffective assistance of trial, appellate, and post-conviction counsel. Although we conclude that the trial court enhanced Petitioner's sentence in violation of the rule announced in Blakely v. Washington, 542 U.S. 296 (2004), that violation was harmless beyond a reasonable doubt. Therefore, it does not provide the basis for an ineffective assistance of counsel claim. Similarly, none of Petitioner's other claims afford a basis for post-conviction relief. Consequently, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Robert M. Linder, Wartburg, Tennessee, Pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Robert L. Headrick, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual and Procedural Background

The facts leading to Petitioner's conviction are detailed in our direct appeal opinion:
On January 10, 2002, Blount County law enforcement officers executed a
warrant to search [Petitioner's] residence located at 2001 Wayne Circle in
Maryville. The officers were investigating allegations that [Petitioner] had
taken pictures and videotaped his four-year-old step-granddaughter, LE,
engaging in sexual activity. The officers seized five computers and other
assorted computer hardware and software items. Pretrial, the defense moved
to suppress the evidence seized from the home on the grounds that the officers
failed to comply with Rule 41 of the Tennessee Rules of Criminal Procedure
and Tennessee Code Annotated section 39-17-1007. The trial court conducted
an evidentiary suppression hearing and denied the [Petitioner's] motion.

Thereafter, [Petitioner] was tried on September 9, 2004, by the trial court
sitting without a jury, and the court found him guilty of the charged offense of
especially aggravated sexual exploitation of a minor, a Class B felony. . . . At
a separate hearing on November 8, 2004, the trial court sentenced [Petitioner]
to a 12-year term of imprisonment, as a Range I standard offender. On appeal,
[Petitioner] argues that the trial court erred in denying his motion to suppress,
and he challenges his sentence as excessive.

[Petitioner] does not contest the sufficiency of the convicting evidence
presented at his bench trial, and we need not dwell at length on the proof
introduced. The state presented the testimony of Anthony Guida, a former
internet crimes investigator for the Knoxville Police Department, and Tiffany
Dailey, the victim's mother. Ms. Dailey testified that LE's date of birth is July
19, 1997. In early January 2002, Ms. Dailey left LE with [Petitioner] and his
wife for most of the day. Ms. Dailey was shown and identified state's exhibit
2 as a photograph of LE taken when she was four years old.

Mr. Guida was contacted by Assistant District Attorney John Bobo who
requested a forensic examination of several computers and digital media seized
from [Petitioner's] residence. Mr. Guida extracted a video of LE and
numerous still images from the video. He described pictures two through 20
as individual screen shots taken from the video, whereas the first and last
pictures came directly from a digital camera; those photographs were
designated as DE-23 and DE-24. DE-23 and DE-24 were both taken with a
Sony movie camera within 30 to 45 seconds of each other, indicating they
were taken in succession from the same camera. For the record, Mr. Guida

described DE-23 as a child exposing her genitalia, sitting on a chair, raising her shirt and staring at a camera. He described DE-24 as showing a vagina and what appears to be a finger moving the underwear aside.

[Petitioner] did not testify or offer any other proof.

The trial court found that the state had proven beyond a reasonable doubt that [Petitioner] was guilty of especially aggravated sexual exploitation of a minor. Relevant to this case, a person commits especially aggravated sexual exploitation of a minor who knowingly promotes, uses, or permits a minor to participate in the performance or in the production of material which includes the minor engaging in sexual activity. . . . The trial court noted that it was undisputed that [Petitioner] produced the material and that LE was a minor at the time. Regarding the disputed issue whether the minor was engaging in sexual activity, the trial court concluded that the state had proven that element of the offense based on the lascivious exhibition of the minor's genitals and pubic area, the striptease nature of the poses, and the intent or design to elicit a sexual response in the viewer.

State v. Linder, No. E2004-02848-CCA-R3-CD, 2006 WL 2714266, at *1-2 (Tenn. Crim. App. at Knoxville, Sept. 22, 2006) (quotation marks, brackets, and citations omitted).

The record reflects that Petitioner admitted many of the salient facts of this case during a 2002 interview with investigators. For example, he acknowledged that the victim was his four-year-old step-granddaughter, that he had a relationship with her lasting her entire life, and that she was alone with him in his house when the offense occurred. This interview was videotaped and admitted into evidence at trial. Also, the victim's mother testified regarding the close relationship the victim had with Petitioner prior to this offense.

The factual recitation in this court's direct appeal opinion did not include two procedural matters that are important in our post-conviction review. First, after Petitioner lost his suppression battle in the trial court, he sought an interlocutory appeal. The trial court allowed the appeal, but this court denied review, as did our supreme court. The suppression issue was therefore left for review on direct appeal.

Second, as noted in the recitation, Petitioner was convicted, and his sentence was enhanced, based upon facts found by the trial judge. What is not noted is that Petitioner waived his right to a jury trial on March 8, 2004. The waiver was apparently given in anticipation of a plea agreement, but Petitioner did not actually plead guilty in March 2004. Instead he was scheduled to enter his plea on June 1. When it came time to do so, Petitioner

changed his mind and insisted upon proceeding to trial. In response, both the trial court and Petitioner's trial counsel informed him that he had waived his right to a jury trial and therefore would be tried by the bench. Three weeks later, the United States Supreme Court issued its opinion in Blakely v. Washington, 542 U.S. 296 (2004). Blakely's requirement that juries, not judges, find all facts other than prior convictions that raise the ceiling of potential punishment disrupted sentencing proceedings across the country. The reverberations continued when Petitioner went to trial in September 2004. Significantly, although Petitioner was advised of his jury rights when he waived them in March 2004, the trial court did not revisit the issue after Blakely; Petitioner was never informed on the record of the impact of Blakely.

In September 2004, Petitioner went to trial and was convicted. At the subsequent sentencing hearing, the trial court noted that Petitioner's waiver was limited to a jury determination of guilt but nevertheless concluded that Blakely did not prevent the court from finding enhancement facts. It then found, over Petitioner's Blakely objections, facts supporting two enhancement factors.

In his direct appeal, Petitioner raised two issues. First, he challenged the trial court's ruling on his motion to suppress. Second, he argued that the trial court improperly applied one of the two enhancement factors—he conceded the other on appeal—and erred in declining to apply a mitigating factor. This court affirmed the suppression decision, finding that the warrant and its execution were proper. It also affirmed the trial court's application of the enhancing factors, but we concluded that a mitigating factor applied as well. Consequently, this court affirmed Petitioner's conviction but reduced his sentence.[1]

Petitioner then filed this petition for post-conviction relief. He was appointed counsel, but after a falling out between them, he proceeded pro se. With the assistance of elbow counsel, Petitioner represented himself at an evidentiary hearing. At the conclusion of the hearing, the post-conviction court denied relief.

On appeal from the post-conviction court's decision, Petitioner raises 32 issues.[2] We list those issues as he presents them:

---

[1] The opinion in Petitioner's direct appeal came down after our supreme court issued its opinion in State v. Gomez, 163 S.W.3d 632 (Tenn. 2005) ("Gomez I"), but prior to Cunningham v. California, 549 U.S. 270 (2007), and State v. Gomez, 239 S.W.3d 733 ("Gomez II").

[2] It appears Petitioner redacted two issues between Issue 25 and Issue 26 in his brief.

-4-

Issue #1 – Whether the Trial Court, Kelly Thomas, erred by denying Motion to Suppress for Statutory challenge based on Non-Conformance with T.C.A. § 39-17-1007 heard on June 16, 2003, Case #C-14001.

Issue #2 – Whether the Trial Court, Kelly Thomas, violated the Appellant's First and Fourth Amendment rights by denying Motion to Suppress for Statutory challenge based on T.C.A. § 39-17-1007 heard on June 16, 2003, Case #C-14001.

Issue #3 – Whether Appellate Court erred by denying Application to review Motion to Suppress rulings based on T.C.R.P. 41(b)(c) procedure errors and Statutory violation of T.C.A. § 39-17-1007, on T.R.A.P. 9, Interlocutory Appeal filed on September 10, 2003 and ruled on October 1, 2003 (E2003-02200-CCA-R9-CD) infringing upon Appellant's First, Fourth and Fifth Amendment rights. (Order, E2003-02200-CCA-R9-CD)

Issue #4 – Whether Tennessee Supreme Court erred by denying Extraordinary Appeal (T.R.A.P. 9) on December 22, 2003. (E2003-02200-SC-S09-CD) infringing on Appellant's First, Fourth and Fifth Amendment rights. (Order E2003-02200-SC-S09-CD)

Issue #5 – Whether Trial Court, Kelly Thomas, erred in allowing trial to continue with fruits of illegal search as evidenced over objections that T.R.A.P. 41 and T.C.A. § 39-17-1007 challenges had not been adjudicated by Tennessee Courts in violation of Appellant's Fifth Amendment rights of Due Process at the State level.

Issue #6 – Whether Trial Court, Kelly Thomas, erred by denying Motion for New Trial based on the T.RC.P. 41 procedure violations, non-compliance with T.C.A. § 39-17-1007 and allowing evidence at trial that was not in compliance with T.C.A. § 39-17-1007 and T.R.C.P. 41.

Issue #7 – Whether Trial Court, Kelly Thomas, erred by sentencing Appellant to maximum in range without a jury trial infringing on his Sixth Amendment U.S. Constitutional rights.

Issue #8 – Whether Trial Court, Michael Meares, at Post Conviction erred in not addressing First Amendment Violations. (Order, Dated March 13, 2008.)

Issue #9 – Whether Trial Court, Michael Meares, at Post Conviction erred in not considering 5th and 14th Amendment Due Process violations. (Order, Dated March 13, 2008.)

Issue #10 – Whether Trial Court, Michael Meares, at Post Conviction erred by not considering 6th Amendment violations of right to a jury trial to enhance sentence. (Order, Dated March 13, 2008.)

Issue #11 – Whether Trial Court, Michael Meares, erred at Post Conviction erred by not considering the issue of 'no inventory' as a violation of Rule 41, which is a Fourth Amendment violation. (Order, Dated March 13, 2008.)

Issue #12 – Whether the Tennessee Supreme Court erred by denying Review of Motion to Suppress on the Rule 10 Extraordinary Appeal compounding the Due Process violation required by the Fifth Amendment of the U.S. Constitution.

Issue #13 – Whether a *de novo* review of transcripts of Motion to Suppress on June 3rd and June 4th, 2003 would confirm Appellant's charge of T.C.A. § 39-16-703, Aggravated Perjury on Sharon Moore and a charge of T.C.A. § 39-16-705, Suborning Perjury against Robert Headrick, as well as Prosecutorial Misconduct.

Issue #14 – Whether the term 'irreparable harm' has been adequately defined by the Tennessee courts?

Issue #15 – Whether a *de novo* review of transcripts of Motion to Suppress hearings on June 3rd and June 4th, 2003 would confirm Appellant's charge of abuse of discretion of Trial judge, Kelly Thomas, in deeming Sharon Moore a credible witness.

Issue #16 – Whether Rule 41 challenge must be adjudicated prior to trial in order for justice to be served and provide a fair trial?

Issue #17 – Whether a T.C.A. § 39-17-1007 Statute-based challenge must be adjudicated prior to trial in order for justice to be served and provide for a fair trial?

Issue #18 – Whether a Pre-Trial Rule or Statute-based challenge can be adequately reviewed after conviction?

Issue #19 – Whether the property receipt submitted with the Search Warrant Return to Judge Brewer, by Sharon Moore on January 16, 2002 satisfies the T.R.C.P. 41 requirement of a written inventory?

Issue #20 – Whether the Appellate Attorney, Julie Rice, not raising the issue of Blakely at appeal E2004-02848-CCA-R3-CD and E2004-02848-SC-R11-CD rises to ineffective counsel?

Issue #21 – Whether the Appellate Attorney, Julie Rice, not raising the issue of perjury of Detective Sharon Moore at appeal E2004-02848-CCA-R3-CD rises to ineffective counsel?

Issue #22 – Whether the Appellate Attorney, Julie Rice, not raising the issue of Suborning Perjury by Assistant Attorney General Robert Headrick at appeal E2004-02848-CCA-R3-CD rises to ineffective counsel?

Issue #23 – Whether the Appellate Attorney, Julie Rice, not raising the issue of lack of 'Uniform Body of Law' at appeal E2004-02848-CCA-R3-CD rises to ineffective counsel?

Issue #24 – Whether the Appellate Attorney, Julie Rice, not raising the issue of T.C.A. § 39-17-1007 at appeal E2004-02848-CCA-R3-CD rises to ineffective counsel?

Issue #25 – Whether the Appellate Attorney, Julie Rice, not raising the issue of Due Process violations at appeal E2004-02848-CCA-R3-CD rises to ineffective counsel?

Issue #26 – Whether no personal contact or telephone contact between Appellant and Attorney, Julie Rice, constitutes ineffective counsel?

Issue #27 – Whether appointed attorney (at Post-Conviction), Kevin Shepherd's failure to follow court orders gives rise to U.S. Constitution 6th Amendment violation of ineffective counsel?

Issue #28 – Whether Trial Court's (Kelly Thomas) abuse of discretion in deeming Sharon Moore's testimony credible on June 3rd and 4th, 2003 in Motion to Suppress rises to a U.S. Constitutional 6th Amendment violation?

Issue #29 – Whether Court Appointed Attorney, Assistant Public Defender Stacey Nordquist was ineffective in representation of Appellant which gives rise to U.S.C.A. 6? (Plain error review)

Issue #30 – Whether failure of Ms. Nordquist to object to Assistant Attorney General Robert Headrick's improper arguments, speculating on evidence and making errorroneous [sic] legal arguments rises to ineffective counsel and prosecutorial misconduct under Plain Error review?

Issue #31 – Whether the state can legally dispose of property seized under a search warrant that has been Rule and Statute challenged in Tennessee courts with no adjudication?

Issue #32 – Whether AAG Robert Headrick was in violation of T.R.C.P. Rule 16 as ordered in Preliminary Order dated September 5, 2007 by denying discovery of photographic log and photographs requested by Petitioner. (Transcript page 64)

## II. Analysis

A defendant is entitled to relief under the Post-Conviction Procedure Act when his "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. To be successful in his claim for post-conviction relief, Petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we view the post-conviction court's findings of fact to be conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 456-58 (Tenn. 2001).

### A. Preliminary Issues

Although Petitioner's list of grievances is lengthy, a few simple, well-established rules of law quickly whittle down the list. We note at the outset that issues raised on direct appeal

are not cognizable on post-conviction review.  See Tenn. Code Ann. § 40-30-106(f) & (h).  Petitioner has already sought review of the validity of the search warrant on direct appeal.  Consequently, issues 1, 2, 6, 7, 8, 9, 11, 13, 15, 19, and 28 are not cognizable now.  Issue 31—whether the State can legally dispose of property seized under a search warrant that is later challenged "with no adjudication"—likewise fails because the seizure has been adjudicated, and Petitioner cannot collaterally attack that decision.  Moreover, the issue is not cognizable in this post-conviction case.

In a similar manner, Petitioner may not collaterally attack our decision to grant or deny review of interlocutory orders.  Indeed, it is a "fundamental and well-settled" rule "that there is no right of appeal from an interlocutory order or judgment in criminal cases."  State v. Bonhart, 448 S.W.2d 669, 672-73 (Tenn. 1969).  We are particularly leery of reviewing our supreme court's decisions to grant or deny interlocutory review.  As a result, issues 3, 4, and 12 fail.  Furthermore, it is entirely proper for a trial court to follow its own decisions when a case is returned after a failed application for interlocutory appeal.  Therefore, issues 5, 14, 16, 17, and 18 provide Petitioner no relief.

Finally, Petitioner is not entitled to relief under issue 32, in which he claims that he was denied discovery during the post-conviction review process.  The record before us reflects that the trial court ordered the State to, within 30 days, inquire into what items it possessed that could be returned to Petitioner.  We discern from the record before us that the matter was resolved.

Having disposed of those issues, we now turn to the issues that require further analysis, specifically, the Petitioner's ineffective assistance of counsel and sentencing claims.

### B.  Ineffective Assistance Of Counsel And Blakely Claims

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The Petitioner must counter the strong presumption that counsel's conduct fell within the range of reasonable professional assistance with which we must begin.  See Strickland, 466 U.S. at 690.  To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause [Petitioner] must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if [Petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

### 1. Ineffective assistance of counsel for non-Blakely issues

We start with Petitioner's claim that he received ineffective assistance from his post-conviction counsel. There is no constitutional right to post-conviction counsel. See House v. State, 911 S.W.2d 705, 712 (Tenn. 1995); see also Frazier v. State, 303 S.W.3d 674, 680 (Tenn. 2010). Therefore, issue 27, as Petitioner articulates it, fails. However, there is a statutory right to post-conviction counsel in some cases. See Tenn. Code Ann. § 40-30-207(b)(1). If we liberally construe the petition, as we must because Petitioner is pro se, see, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972), Petitioner invokes that statutory right here. Nevertheless, House made clear, that "[a]ll that due process requires in the post-conviction setting is that the defendant had 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" 911 S.W.2d at 711 (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)); see also Frazier, 303 S.W.3d at 682 ("[P]erformance of post-conviction counsel is not governed by the standard set forth in Strickland."); State v. Stokes, 146 S.W.3d 56, 61 (Tenn. 2004). Petitioner neglected to put on any evidence regarding this issue. He did not testify about his post-conviction counsel, call his counsel to testify, or otherwise submit any evidence to suggest his post-conviction counsel did not meet his statutory obligations. Thus, to the extent this issue was before the post-conviction court, there is no basis for relief. Furthermore, the record before us indicates Petitioner first raised the issue in this appeal, and thus waived it. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995).

Although there is more evidence regarding Petitioner's trial counsel's performance, we are not persuaded that she was constitutionally ineffective. At the conclusion of the post-conviction hearing, the trial court found that Petitioner's trial counsel:

> was not deficient in any respect in her representation of [Petitioner]; that she is an experienced—was and is an experienced trial counsel who was well prepared and effective in representing [Petitioner]. Even if there was some result of some argument that was unsuccessful, the Court does not find it to be based upon any deficiency on her part, and does not find that anything she did,

-10-

any action she took in [Petitioner's] representation was prejudicial to [Petitioner]. In fact, the Court finds specifically that [Petitioner's] failure to heed her advice with respect to the plea offer made by the State for [Petitioner] to plead to an eight-year sentence, in fact, was the prejudicial problem in [Petitioner's] case, that you failed to hear that advice from counsel. So, with respect to the constitutional arguments that [Petitioner] had ineffective assistance of counsel, the Court finds no merit in those arguments.

The court reiterated these findings in its written order:

1. Petitioner's trial counsel is an experienced attorney and was a credible witness and was not ineffective in her preparation or trial of this cause. Specifically counsel's handling of [Petitioner's] Motions to Suppress, interlocutory appeal, trial preparation, and negotiation strategy were well presented and argued albeit unsuccessful.

2. There was no prejudice arising from defense counsel's representation and in fact [Petitioner] refused his attorney's advice with respect to an eight year negotiated plea agreement.

Our reading of the record gives us no reason to doubt the trial court's findings. The record shows that trial counsel zealously protected Petitioner's interests. She made an extensive effort to suppress evidence, and even sought interlocutory appeal—albeit unsuccessfully. She negotiated a favorable plea proposal that Petitioner refused, and she preserved the critical issues for appellate review. Trial counsel said that she chose not to object to the State's closing argument. We will not second guess that strategic decision. See Hellard v. State, 629 S.W.2d 4, 9-10 (Tenn. 1982). While the results were not what Petitioner would have liked, the record does not demonstrate that they were the consequence of trial counsel acting in a deficient manner. Moreover, the record does not demonstrate that Petitioner was prejudiced by his trial attorney's performance. The evidence in this case was overwhelming. Once Petitioner lost his motions to suppress, very little could have changed the outcome of his trial. We therefore concur with the post-conviction court that Petitioner has failed to establish either prong of the Strickland test. Thus, issue 30 fails.[3]

The record is largely devoid of evidence concerning appellate counsel's performance. Petitioner again did not give any testimony about his appellate counsel, and appellate counsel did not testify at the post-conviction hearing. The only time Petitioner discussed his appellate counsel was during his closing argument when he contended that she failed to frame his sentencing and suppression issues the way he thought she should have. Therefore,

---

[3] We save issue 29 for discussion below.

the issues regarding appellate counsel's performance are also waived because they were not raised below. See Alvarado, 961 S.W.2d at 153; Turner, 919 S.W.2d at 356-57. Regardless, the record before us does not provide a basis to overcome our strong presumption that counsel's performance was acceptable, see Strickland, 466 U.S. at 690, and it certainly is not enough to establish ineffective assistance of counsel by a preponderance of the evidence. Issues 21, 22, 23, 24, 25, and 26 fail.

## 2. **Blakely** issues

As explained above, approximately seven months passed between Petitioner's jury waiver and the trial commencing. In the meantime, the United States Supreme Court issued its opinion in Blakely, 542 U.S. 296, which dramatically impacted our sentencing laws. The trial court did not revisit the jury waiver after Blakely, except to declare that Blakely did not impair its ability to find enhancement facts. Consequently, it does not appear that Petitioner could have been fully aware of the implications of his pre-Blakely waiver on his post-Blakely trial. Furthermore, Petitioner was told by the trial court that he was bound by his pre-Blakely waiver. This issue manifests itself in three ways: whether (1) Petitioner validly waived his right to a jury; (2) trial counsel was ineffective with respect to Petitioner's Blakely rights; and (3) appellate counsel was likewise ineffective regarding Blakely. We believe that the petition, liberally construed, raises these claims in issues 10, 20, and 29. Although we conclude that none of them warrant relief, they merit deeper analysis. That analysis begins with a brief review of how Blakely affected our sentencing law.

### a. the impact of **Blakely**

As it stands now, the United States Constitution and United States Supreme Court case law prohibit a trial judge from imposing "a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." Cunningham, 549 U.S. at 274-75. "The relevant statutory maximum . . . is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." Id. at 275 (quotation marks and brackets omitted). Today, the relevant maximum in Tennessee is generally the statutory maximum for a given offense. See Tenn. Code Ann. § 40-35-210 (2006); see also State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008).

However, when Petitioner waived his right to a jury trial in March 2004, that was not the case. Instead, when no enhancement factors applied, our sentencing law provided for presumptive sentences that were typically the minimum sentence within the applicable range. See Gomez II, 239 S.W.3d at 739-40. Moreover, our case law at the time allowed the *sentencing judge* to find the facts necessary to apply each enhancement factor. See, e.g.,

Graham v. State, 90 S.W.3d 687, 692 (Tenn. 2002) (holding that so long as the ultimate sentence is within the statutory range, the sentencing judge has "discretion to consider all enhancing and mitigating factors") (quotation marks omitted); Gomez I, 163 S.W.3d at 662-63 (Anderson, J., concurring in part and dissenting in part) (prior to Blakely, federal case law "did not appear to affect sentencing schemes where a judge made findings that moved a defendant out of the base range from one 'mini-range' to another, as long as the sentence did not go outside the statutory range").

In short, when Petitioner waived his right, the trial judge could sentence him anywhere within the eight-to-twelve year statutory range based on facts that the judge—not the jury—found by a preponderance of the evidence. In effect, Petitioner appeared to be giving up *only* his right to have his *guilt* determined by a jury beyond a reasonable doubt because, waiver or no waiver, the judge could have found the enhancements.

Then came Blakely. In Blakely, the Court clarified that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." 542 U.S. at 303-04. In other words, it is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 303. To enhance a sentence above that point based on facts that are not admitted and are not prior convictions, Blakely requires that "a jury must find, not only the facts that make up the crime of which the offender is charged, but also all (punishment-increasing) facts about the *way* in which the offender carried out that crime." 542 U.S. at 328 (Breyer, J., dissenting).

Petitioner went to trial in September 2004, after Blakely. Thus, the jury rights Petitioner waived—the right to a jury determination of *guilt* beyond a reasonable doubt—was something less than the complete Sixth Amendment jury trial right as it was defined at the time of his trial: a jury determination of both guilt and the facts required for enhancement factors beyond a reasonable doubt. Absent a valid waiver, an admission from Petitioner, or a jury finding of the enhancement fact, Petitioner would be entitled to the presumptive sentence of eight years.

With that background, we turn to the three issues Blakely creates for this case.

**b. the validity of Petitioner's jury waiver**

We begin with the first: whether Petitioner's jury waiver was invalid with respect to his Blakely right to a jury determination of sentencing-enhancing facts. This issue is a non-starter because it was not raised on direct appeal. See Tenn. Code Ann. § 40-30-106(g); see also State v. Townes, 56 S.W.3d 30, 35 (Tenn. Crim. App. 2000), overruled on other grounds

by State v. Terry, 118 S.W.3d 355 (Tenn. 2003). Therefore, issue 10 fails, at least insofar as it is framed as an independent ground for relief. However, although Petitioner cannot now challenge the validity of his jury waiver as an independent ground for relief, the validity of the waiver could nevertheless be a valid component to a post-conviction claim concerning the effectiveness of Petitioner's counsel. Consequently, issues 20 and 29 require that we delve into the effect Blakely had on the validity of Petitioner's jury waiver.

The right to have a jury find all enhancement facts can be waived. See Blakely, 542 U.S. at 310. In Tennessee, criminal jury trial waiver is generally governed by Criminal Procedure Rule 23, which requires that the waiver be, in addition to other things, in writing. See Tenn. R. Crim. P. 23(b)(2)(A). If the waiver is not in writing, it is only effective if the defendant was "advised by the court of his right to a jury trial, and then . . . personally waive[d] the right in open court for the record." Kenneth J. Jones v. State, No. M2007-00397-CCA-R3-PC, 2008 WL 271909, at *5 (Tenn. Crim. App. at Nashville, Feb. 1, 2008) (quoting State v. Ellis, 953 S.W.2d 216, 220 (Tenn. Crim. App. 1997)) (emphasis omitted). Although Petitioner did not execute a written waiver, the record nevertheless demonstrates that Petitioner was advised of his right to a jury and that he personally waived that right in open court. As a result, Petitioner's waiver was procedurally valid.

We must also address the substance of the waiver. As is generally the case, "[i]n order for a waiver of a constitutionally granted right to be valid, it must be voluntarily, knowingly, and intelligently given." State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998) (quotation marks omitted). To satisfy that requirement, the record must demonstrate that the defendant "has been made aware of the significant consequences" of the waiver. Id. Between the time of Petitioner's waiver and his trial, Blakely changed the substantive understanding regarding the right to have a jury find additional facts used to enhance the sentence. Because the trial court did not revisit the waiver, it is not clear from the record that Petitioner knowingly gave up the rights afforded by Blakely. Indeed, the colloquy between the trial judge and Petitioner specifically limited Petitioner's waiver to his right to have a jury decide his "guilt or innocence." When Petitioner's counsel raised Blakely at sentencing, the trial court decided that it was not "prohibit[ed]" from finding enhancement facts, even though it noted that the "jury waiver did not specifically include waiving any jury determination other than guilt or innocence." Indeed, not only was the waiver expressly limited, Petitioner could not have known of his Blakely rights at the time of the waiver in March 2004. Consequently, we conclude that Petitioner's jury waiver was not knowingly and intelligently given, and was therefore not valid with respect to his Blakely rights. Furthermore, the trial court relied on the inadequate waiver to find that he could enhance Petitioner's sentence above the presumptive minimum.

The question then becomes whether the invalid jury waiver and subsequent judicial finding of enhancement facts would have entitled Petitioner to relief if it had been raised on direct appeal. "[T]he commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal." Washington v. Recueno, 548 U.S. 212, 218 (2006). Recueno noted that "most constitutional errors can be harmless." Id. It then declared that Blakely errors are not structural. See id. at 218-22. The Court explained that because sentencing factors are indistinguishable from elements of a felony offense as far as the Sixth Amendment right to a jury trial is concerned, "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." Id. at 220-22. Blakely errors are therefore subject to harmless error review. Id. at 219-20 (citing Neder v. United States, 527 U.S. 1 (1999) (holding that the failure to instruct the jury regarding a necessary element of an offense is error, but subject to harmless error review)); see also State v. Richmond, 90 S.W.3d 648, 657-58 (Tenn. 2002) (applying the Neder harmless error test where the trial court neglected to instruct the jury on a necessary element); State v. Allen, 69 S.W.3d 181, 189-91 (Tenn. 2002) (applying the Neder harmless error analysis where trial court failed to instruct jury on lesser-included offense); State v. Brian Milam, No. 2008-00695-CCA-R3-CD, 2010 WL 744398, at *21 (Tenn. Crim. App. at Nashville, Mar. 3, 2010) (applying harmless error analysis to Blakely error), application for perm. to appeal filed, (May 3, 2010); State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *21 (Tenn. Crim. App. at Nashville, Nov. 30, 2004) (same).[4]

When reviewing a trial court error in a criminal case for harmlessness, the State must "prove that the . . . violation is harmless beyond a reasonable doubt." Momon v. State, 18 S.W.3d 152, 167 (Tenn. 1999). To do so, the record must demonstrate that the erroneously-found fact "was uncontested and supported by overwhelming and uncontroverted evidence." Allen, 69 S.W.3d at 190. That requires a "thorough examination of the record to determine if, beyond a reasonable doubt, the jury verdict would have been the same absent the error." Richmond, 90 S.W.3d at 657. In other words, we must determine "whether the record contains evidence that could rationally lead to a contrary finding by the jury with respect to the omitted element." Id.

Petitioner has never contested the facts critical to the enhancements at issue. The proof at trial that the victim was his four-year-old step-granddaughter was not disputed. Nor has he ever contested the fact that he was the sole caretaker in the house the day he committed the crime.

---

[4] We note, however, that this court has also held that, in the absence of Blakely-compliant enhancement facts, a sentence must be the presumptive minimum. See State v. Carlos Eddings, No. W2003-02255-CCA-R3-CD, 2004 WL 2266794, at *14 (Tenn. Crim. App. at Jackson, Oct. 8, 2004).

Upon review of the record, which includes Petitioner's admission of the critical facts during the videotaped March 2002 interview, there is no rational basis for a jury to have concluded that the victim was not particularly vulnerable or that Petitioner did not abuse a position of trust. We have no difficulty concluding, beyond a reasonable doubt, that no reasonable jury confronted with this record would have declined to find the critical facts for these enhancements. As described below, the evidence on these points is uncontroverted and overwhelming.

To establish that the victim in this case was "particularly vulnerable" under Tennessee Code Annotated section 40-35-114(4), the evidence must have shown that she was unable to either "resist the crime, summon help, or testify at a later date." State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001) (quotation marks omitted).[5] "A victim's youth does not necessarily equate with vulnerability," and although "[t]he State is required to proffer evidence in addition to the victim's age . . . that evidence need not be extensive." Id. (citations and quotation marks omitted).

Here, the evidence showed that the victim was a very young girl—only four years old. It also showed that she was confined in the house with her adult step-grandfather. She was thus unable to resist or summon help. No rational jury would have found otherwise.

Tennessee Code Annotated section 40-35-114(14) provides that Petitioner's sentence may be enhanced if he abused a position of private trust. This, obviously, includes two questions: (1) whether Petitioner was in a position of trust vis-a-vis the victim; and (2) whether he abused that trust. See State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). Our supreme court has noted that "[t]he position of parent, step-parent, babysitter, teacher, [and] coach are but a few obvious examples." Id. But the critical question concerns "the nature of the relationship," not its formal title, and turns on whether the relationship "promoted confidence, reliability, or faith." Id.

Here, Petitioner was both the victim's step-grandparent and, at the time, her babysitter. He had known the victim all her life. Furthermore, her mother testified that the victim had a trusting relationship with Petitioner, whom "she thought loved her" and whom "she looked at like a Papaw." No reasonable jury could have concluded that Petitioner was not in a position of trust. Nor could it have concluded that Petitioner did not abuse that trust in committing this crime. Indeed, he essentially said as much in his 2002 interview with investigators when he told them that his conduct was "totally inappropriate" because he was

_____

[5] Since Petitioner's sentencing, the enhancement factors have been renumbered. The enhancement under section 114(4) was previously codified in 114(5), and enhancement 114(14) was codified in 114(16). The renumbering created no substantive differences.

the adult and she was the child. This interview was introduced into evidence at Petitioner's trial.

The predicate facts for these enhancements were neither contested nor, upon review of the record, even really contestable. The evidence supporting both was overwhelming. We thus conclude, after our thorough review of the record, that the Blakely error in this case was harmless beyond a reasonable doubt.[6]

### c. ineffective assistance of trial counsel regarding Blakely

We next turn to the question of whether Petitioner's trial counsel was ineffective with respect to the Blakely issue. We conclude that she was not. As noted above, for Petitioner to obtain relief he must satisfy both prongs of the Strickland test. The record establishes neither. First, trial counsel unsuccessfully raised the Blakely issue at sentencing. Therefore her performance was not deficient. It is possible she was deficient in not re-advising Petitioner about the ramifications of his jury waiver after Blakely, but it is unclear whether she discussed Blakely with him prior to trial; Petitioner did not submit any evidence on that point. Moreover, as detailed above, there is no prejudice because the evidence overwhelmingly implicated the enhancements. We are confident beyond a reasonable doubt that the jury would have found the enhancements. Regardless, nothing in the record indicates Petitioner would have restricted his jury waiver to the guilt phase had he only known of his Blakely rights. In short, there is no prejudice here.

### d. ineffective assistance of appellate counsel and Blakely

Finally, we examine whether appellate counsel was ineffective with regard to the Blakely issues. This is a closer call. The record indicates that appellate counsel did not raise any Blakely issues on direct appeal, even though trial counsel testified that she advised appellate counsel about the issue. Appellate counsel also conceded the application of one of the enhancement factors. These actions may have been deficient performance.[7] However, we have no evidence regarding why appellate counsel took the positions she did. It could

---

[6] To be sure, we do not base our conclusion that the Blakely error in Petitioner's trial was harmless on the fact that Petitioner conceded the applicability of the abuse of trust enhancement on appeal, see Linder, No. E2004-02848-CCA-R3-CD, 2006 WL 2714266, at *6. As discussed below, it is possible that appellate counsel may have had a strategic reason for this concession. But because it is not clear from the record that she did, we will not consider the Blakely error harmless on that concession.

[7] This is particularly true given appellate counsel's failure to preserve the Blakely issue for appeal. On that score, we note that the issue was still winding its way through both the state and federal court systems and was very much alive, as evidenced by the United States Supreme Court's reversal of Gomez I.

have been a sound strategy, especially in the face of <u>Recueno</u>'s holding that <u>Blakely</u> violations are subject to harmless error analysis.[8] Thus, in light of our strong presumption that counsel's conduct fell within the range of reasonable professional assistance, see <u>Strickland</u>, 466 U.S. at 690, Petitioner has failed to establish deficient performance. Regardless, because the <u>Blakely</u> the error was harmless, Petitioner cannot establish prejudice. Therefore, petitioner is not entitled to relief for ineffective assistance of appellate counsel either.

After a thorough review, issues 10, 20, and 29 also fail.

### III.  Conclusion

Upon review of the record and the parties' briefs, for the reasons detailed above we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

---

[8] We note that, from the beginning of Petitioner's direct appeal, this court had concluded that <u>Blakely</u> errors were subject to a harmless error analysis.  <u>See</u> <u>State v. Chester Wayne Walters</u>, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *21 (Tenn. Crim. App. at Nashville, Nov. 30, 2004).  In <u>Chester Wayne Walters</u>, this court explained that, because United States Supreme Court precedent made clear that enhancement factors were roughly equivalent to elements of the underlying crime insofar as jury trial protections are concerned, <u>Blakely</u> errors were subject to the same harmless error analysis that applied to jury instruction errors.  <u>See</u> <u>id.</u> (citing <u>Neder</u>, 527 U.S. at 8-14).  As explained above, this is precisely the analysis the Supreme Court took a year and a half later in <u>Recueno</u>, which was issued while Petitioner's direct appeal was still pending.