IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

December 21, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| Appellee | ) | FILED: DECEMBER 21, 1998 |
| | ) | |
| v. | ) | SUMNER COUNTY |
| | ) | |
| BOBBY VINCENT BLACKMON | ) | HON. JANE WHEATCRAFT and |
| | ) | HON. FRED A. KELLY, III |
| Appellant | ) | Judge |
| | ) | |
| | ) | NO. 01-S-01-9709-CR-00187 |

For Appellant:

MARK W. HENDERSON
Nashville, TN

For Appellee:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

DOUGLAS D. HIMES
Assistant Attorney General
Nashville, TN

LAWRENCE RAY WHITLEY
District Attorney General

DEE DAVID GAY
KATHI PHILLIPS
Assistant District Attorney General
Gallatin, TN

OPINION

REVERSED IN PART, AFFIRMED IN PART                    BIRCH, J.

We granted permission to appeal pursuant to Tenn. R. App. P. 11 to the appellant, Bobby Vincent Blackmon, in order to determine whether, and if so, under what circumstances, the right to be tried by a judge who is constitutionally qualified[1] can be waived. We address also the appellant's contention that the judgment of forfeiture entered against his vehicle seized incident to his arrest on April 20, 1993, constitutes "punishment," such as would violate the constitutional prohibitions[2] against double jeopardy.

Following a careful consideration of the issues, we conclude that a defendant can, indeed, waive the right to a constitutionally qualified judge. In the case under review, however, the record does not support a waiver of this right. We find also that there is no double jeopardy violation in the forfeiture proceedings.

I

Blackmon was arrested in Sumner County for possession of a Schedule II controlled substance with intent to sell.[3] His vehicle was confiscated upon arrest and later forfeited to the State.[4]

---

[1]Tenn. Const. art. VI, § 11.

[2]U.S. Const. amends. V, XIV; Tenn. Const. art. I, § 10.

[3]Tenn. Code Ann. § 39-17-417(a)(4)(1991).

[4]Tenn. Code Ann. § 53-11-451 (1991 & Supp. 1997).

Judge Jane Wheatcraft, then a judge of the General Sessions Court, conducted Blackmon's preliminary hearing. At its conclusion, she found probable cause and bound the charges to the grand jury, and the defendant was indicted. By the time the case was set for jury trial on February 14, 1995, Judge Wheatcraft had become Judge of the Criminal Court for Sumner County. In that capacity, she conducted Blackmon's trial on the indicted charges. The jury convicted Blackmon, but he has not yet been sentenced on this conviction.

Blackmon filed a motion for arrest of judgment on May 25, 1995, seeking to invalidate the conviction. He insisted that it violated Tenn. Const. art. VI, § 11, because Judge Wheatcraft had conducted his preliminary hearing and bond reduction hearing in General Sessions Court and later conducted his trial in Criminal Court. Judge Wheatcraft heard the motion on June 20, 1995, and entered an order granting Blackmon a new trial. Judge Wheatcraft entered an order of recusal from all further proceedings in this cause.

On July 18, 1995, the State filed an application for permission for an interlocutory appeal in an effort to vacate the order granting a new trial. Judge Wheatcraft granted the State's request for an interlocutory appeal on the judge-qualification issue. Judge Fred A. Kelly, sitting by designation, considered Blackmon's motion to dismiss for an alleged double jeopardy violation. He overruled that motion and granted the motion for an interlocutory appeal on the double jeopardy issue.

On interlocutory appeal, the Court of Criminal Appeals reversed the ruling awarding Blackmon a new trial and reinstated the conviction. The court held that Blackmon's counsel[5] waived the benefit of Tenn. Const. art. VI, § 11, thereby vesting Judge Wheatcraft with jurisdiction to conduct the trial. Additionally, the court affirmed the order overruling Blackmon's motion to dismiss the forfeiture on double jeopardy grounds, relying on the decision of the United States Supreme Court in United States v. Ursery, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996).

II

We have addressed the judge-qualification issue before. In State v. Henderson, 442 S.W.2d 629 (Tenn. 1969), the Court held that the constitutional right to a constitutionally qualified judge could be waived. The Court based its decision on the clear language of Tenn. Const. art. VI, § 11, which provides: "No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause . . . in which he [or she] may have presided in any inferior Court, except by consent of all the parties." Further, Tenn. Code Ann. § 17-2-101(4) (1991) provides: "No judge or chancellor shall be competent, except by consent of all parties, to sit in any of

_____

[5]Blackmon was represented by Mark Henderson, a public defender. Blackmon argues that because Henderson was a public defender, he was a state agent and could not waive Blackmon's constitutional right. Blackmon relies upon Hamilton v. State, 218 Tenn. 317, 320, 403 S.W.2d 302, 303 (Tenn. 1966), which states "even if consent to waive this constitutional right of defendant were permissible, defendant was represented in this 'consent' by the Public Defender, a State agent." Because we hold that Blackmon did not consent to the waiver, we need not address the merits of this contention.

4

the following cases: [When the judge or chancellor] . . . [h]as presided on the trial in an inferior court. . . ." Relying upon House v. State, 911 S.W.2d 705 (Tenn. 1995), the Court of Criminal Appeals found that the decision of Blackmon's counsel to waive the judge's qualification was imputable to Blackmon and, hence, binding. We disagree. Because Blackmon had the right to waive the constitutional and statutory qualification of the trial judge, we must determine whether he exercised that right.

The constitutional and statutory provisions relating to a judge's qualification are directed towards ensuring the impartiality of a judge. We have held that the right to an impartial judge is a fundamental constitutional right. State v. Benson, 973 S.W.2d 202, 205 (Tenn. 1998). Due to our long-standing presumption against waiver of fundamental constitutional rights, these rights must be personally waived by a defendant. State v. Muse, 967 S.W.2d 764, 767 (Tenn. 1998).

In order for a waiver of a constitutionally granted right to be valid, it must be "voluntarily, knowingly, and intelligently" given. State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992). The knowing and voluntary waiver includes the intentional relinquishment or abandonment of known rights. State v. Pearson, 858 S.W.2d 879, 887 (Tenn. 1993); Johnson v. State, 834 S.W.2d 922, 923 (Tenn. 1992); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938). The record of a waiver of a defendant's right "must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has

5

been made aware of the significant consequences of such a [waiver]; otherwise, it will not amount to an 'intentional abandonment of a known right.'"  State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). The Court will not presume a waiver of important constitutional rights from a silent record.  Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274, 279 (1969).

In the case under submission, the record does not include evidence sufficient to demonstrate a "knowledgeable" waiver by Blackmon.  The record does not show that Blackmon understood the effect of the waiver and the attendant constitutional implications. This is evidenced by counsel's discussion with the court:

> Q:  [The Court] Did you discuss the jurisdictional issue with your client?
>
> A:  [Mr. Henderson] I did.  I didn't discuss the Hamilton case.  To be truthful, I didn't know about it.
>
> Q: Did you discuss the fact that I had had the preliminary hearing?
>
> A: He asked me about that, and I told him I believed you would be a fair and impartial judge, and I believe you were a fair and impartial judge.  I disagree with some of your rulings.  We will have those kinds of differences over the years, I expect.
>
> This is not the point, Judge.  If you look at the Hamilton case --
>
> Q: You discussed the fact I had the preliminary hearing.  I had forgotten.  I thought I had just had a bond hearing.  That is neither here nor there.  What did you determine?  Not to raise that issue?
>
> A: I told him that I believed you would be a fair and impartial jurist.  And it was my decision, not his, to go forward and have a trial of the case.

Q: Did he concur with you? I mean did he say that's all right?

A: He didn't say one way or the other anything. I was counsel, and that is what I decided to do, and that was the end of it.

Q: He understood at that time he had a right to raise that issue, I take it.

A: I don't know what he understood at that time.

Q: You talked to him about it?

A: I talked to him about it, but as far as -- it was my opinion that his case would be better served by going to trial at that time before you. I felt like you would be fair and impartial, and I felt like we would get a fair hearing. And he relied totally on my advice at that time. . . .

What the record demonstrates is that counsel's conversation with Blackmon about this issue was focused on the fairness of the trial judge not the significance of the waiver. It further demonstrates counsel's failure to clearly advise Blackmon that a different judge would conduct his trial if he declined to waive the qualification issue. In our view, Blackmon did not waive his right to a constitutionally qualified judge. This right does not implicate principles of fairness over which the judge is the arbiter--it chiefly concerns a judge's qualification--a matter to be decided under the constitution and subject to waiver by the defendant.

III

We move now to address Blackmon's claim that the forfeiture of his automobile, seized incident to his arrest on the instant charges, is "punishment" for the purposes of the double jeopardy clauses of the United States and the Tennessee Constitutions, thereby rendering additional punishment unconstitutional.

The double jeopardy clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb. . . ." In addition, Tenn. Const. art. I, § 10 provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb."

In <u>Ursery</u>, the United States Supreme Court held that civil forfeiture generally does not constitute punishment for the purposes of the double jeopardy clause. 518 U.S. at 270-71, 116 S. Ct. at 2138, 135 L. Ed. 2d at 557. The Court based its decision on a two-part test, one prong being whether the legislature intended forfeiture proceedings to be criminal or civil. <u>Id.</u> at 288, 116 S. Ct. at 2147, 135 L. Ed. 2d at 568-69. The second prong being whether the forfeiture proceedings are so punitive in form and effect as to overcome our legislature's intent and render the proceedings criminal. <u>Id.</u>

In <u>Stuart v. State Dep't of Safety</u>, 963 S.W.2d 28, 32 (Tenn. 1998), the Court relied on the two-part <u>Ursery</u> test and held

8

that forfeiture under Tennessee law is an action in rem, which is traditionally viewed as a civil proceeding. Because the legislature intended forfeiture to be a civil, in rem proceeding, the Court held that forfeiture does not impose "punishment" for the purposes of the double jeopardy clauses of the United States and the Tennessee Constitutions. Id. at 30. Under Stuart, Blackmon's double jeopardy issue is without merit.[6]

IV

Accordingly, the judgment of the Court of Criminal Appeals, insofar as it holds that Blackmon consented to the trial court's jurisdiction, is reversed. As respects the forfeiture-double jeopardy issue, the judgment of the Court of Criminal Appeals is affirmed. The cause is remanded to the trial court for a new trial or other appropriate disposition. Costs of this cause are taxed against the State, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J.
Drowota, Holder, Barker, JJ.

---

[6]Blackmon's double jeopardy issue is controlled by Stuart which, in fairness to our brethren, was released subsequent to the Court of Criminal Appeals's opinion in this cause.

9