# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 29, 2002 Session

## ALLEN DALE CUTSHAW v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Greene County
### No. 01CR074    James E. Beckner, Judge

### No. E2002-00438-CCA-R3-PC
### January 22, 2003

The petitioner, Allen Dale Cutshaw, appeals the trial court's denial of his petition for post-conviction relief. In this appeal, the petitioner asserts that he was denied the effective assistance of counsel. The judgment of the trial court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

J. Russell Pryor, Greeneville, Tennessee, for the appellant, Allen Dale Cutshaw.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Cecil Mills, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

The petitioner was convicted of second degree murder for the shooting death of the victim, J.R. Metcalf, and sentenced to twenty-five years' incarceration. Both the conviction and accompanying sentence were affirmed on direct appeal. See State v. Allen Dale Cutshaw, No. 03C01-9711-CC-00521 (Tenn. Crim. App., at Knoxville, Nov. 23, 1999). Later, the petitioner filed this petition for post-conviction relief, alleging that he was denied the effective assistance of counsel at trial. He specifically complained that his trial counsel was ineffective for failing to present certain favorable defense witnesses and for denying him the right to testify.

The petitioner, originally charged with first degree murder, was convicted of second degree murder for the December 14, 1996, shooting death of the victim. During the late evening hours of December 13, the petitioner and the victim were involved in a fight at the Starlite Club in Greene County. After bouncers at the club broke up the fight, the petitioner was asked to leave. As he left, the petitioner told people inside the bar that he wanted the victim to meet him at a certain location to continue the fight. Later, the petitioner returned to the bar looking for the victim.

Angela Dawn Smelcer testified that she left the Starlite Club with the victim and that they drove around looking for the petitioner. She stated that Ed Thomas, a friend of the victim, assisted them in their search. Eventually, while traveling on Arlie Waddell Road, they encountered the petitioner, who was driving toward his residence. According to Ms. Smelcer, the victim directed her to stop the car, stepped outside the vehicle, and began walking toward the petitioner, who had also stopped his truck. She testified that the victim lifted his shirt to show the petitioner that he was unarmed and shouted for the petitioner to "fight like a man." Ms. Smelcer, who recalled someone shouting that the petitioner had a gun, saw the weapon as the petitioner held it down to his side. Ms. Smelcer testified that the victim dove toward the petitioner's feet, in an apparent effort to knock him down, and was killed when the gun discharged. Other witnesses confirmed that account.

At the evidentiary hearing, trial counsel testified that he was certified as a criminal trial specialist by the Tennessee Commission on Continuing Legal Education and by the National Board of Trial Advocacy. At the time of trial, he had been practicing law for over twenty years. Trial counsel stated that he had spent "at least" two hundred fifty hours preparing for the petitioner's trial, much of which was spent interviewing potential witnesses. He contended that another attorney in his firm and his investigator spent countless hours interviewing forty to fifty potential witnesses. Trial counsel testified that shortly before the trial, he conferred with the petitioner and two of his family members about which witnesses would be called to testify. Trial counsel maintained that the petitioner was "happy" with the proposed list of defense witnesses.

Trial counsel believed that there was "a very credible theory of self-defense" based upon evidence of a number of violent confrontations between the petitioner and the victim in which the victim had been the first aggressor. He recalled that the petitioner informed him that a witness named David Davis, a former sheriff, had witnessed one such altercation where the victim had fired shots at the unarmed petitioner. It was trial counsel's belief that Davis' testimony would not have been helpful because of the time lapse between the altercation and the trial. Trial counsel also recalled that it was his belief that Davis would not have been an effective witness. He also remembered that the petitioner had suggested Jerry Grooms as a possible witness. After investigating, he concluded that Grooms should not be called because there were questions about his credibility.

As to the second issue, trial counsel acknowledged that he had recommended that the petitioner not testify at trial. He contended, however, that he advised the petitioner that the decision was one he would have to make on his own. In making his recommendation to the petitioner, trial counsel expressed particular concern about incriminating statements, which had been recorded, that the petitioner had made to a third party. Trial counsel explained that while the trial court had ruled prior to trial that the tape would be inadmissible in the state's case-in-chief, it had determined that the tape could be used to impeach the petitioner during any cross-examination. According to trial counsel, the petitioner indicated at the close of the proof that he did not wish to take the stand.

At the evidentiary hearing, David Davis, a former sheriff, testified that he had witnessed a prior violent confrontation between the petitioner and the victim at his business, South Greene

Market. He recalled that during the altercation, the victim fired a number of shots at the petitioner as the petitioner sped away in his vehicle. According to Davis, the incident occurred "eight or nine years, maybe ten years" prior to the shooting which resulted in the victim's death. Davis testified that he remembered an occasion when the petitioner came to his store to hide, explaining that the victim was chasing him. Davis stated that the victim sometimes carried a pistol and had once threatened to kill the defendant. Davis testified that he had tried to contact trial counsel prior to the petitioner's trial and had actually spoken to a secretary. During cross-examination, Davis acknowledged that his purpose in contacting trial counsel was to inform him that Jerry Grooms was willing to testify for the defense. Davis stated that he never anticipated being a witness for the defense.

Jerry Grooms, who claimed at the evidentiary hearing that he was never contacted by trial counsel or any of his employees in advance of the trial, testified that he had witnessed three violent altercations between the petitioner and the victim. He recalled that on one occasion, the victim shot at the petitioner while the petitioner sat in his car in the parking lot of Davis' business. Grooms claimed that the victim continued to fire at the petitioner's car as he drove away.

Danny Cutshaw,[1] who had worked at a bar call the Starlite, testified that he knew the petitioner and the victim. According to Cutshaw, the victim often carried a weapon and had fired shots at him some ten years earlier. Cutshaw also recalled that the victim had threatened to kill the petitioner. Cutshaw acknowledged that he was contacted by trial counsel in advance of the trial but could not recall the content of their conversation.

Lisa Hensley testified that she had observed an altercation between the petitioner and the victim "some years back" at the Starlite Club. She recalled that the victim had grabbed the petitioner from behind, pulled his jacket over his head, and pushed the petitioner to the ground. Hensley testified that the victim "just started flailing on [the petitioner], just left and right," until club security intervened. According to Ms. Hensley, the victim would often drive back and forth in front of the petitioner's house "fishtailing and spinning gravels." Ms. Hensley claimed that she was never contacted by trial counsel.

Shirley Thomas, the petitioner's mother, testified that she was present when trial counsel told the petitioner that the district attorney had offered a plea agreement which provided for seven years' incarceration. Ms. Thomas claimed that trial counsel informed them that he had already rejected the offer and estimated that the petitioner's chances for acquittal were "fifty-fifty." She conceded that trial counsel had not actually indicated that an offer of seven years had been made, but instead stated that he had discussed such an offer with the district attorney. Ms. Thomas acknowledged that before trial, she and the petitioner both concurred in trial counsel's strategy regarding the selection of defense witnesses.

Debra Tweed, the petitioner's sister, remembered that trial counsel had hoped for a plea agreement involving a seven-year sentence. She testified that trial counsel encouraged the petitioner

---

[1]Cutshaw testified that if he was related to the petitioner, the relation would be "distant."

not to take the stand because the testimony of Dawn Smelcer, an eyewitness, would establish self-defense. Ms. Tweed claimed that the petitioner indicated that he wanted to testify and trial counsel suggested that the decision be delayed until the close of the other proof. Ms. Tweed never saw trial counsel approach the petitioner before the close of proof, implying that the petitioner was not given the opportunity to testify.

The petitioner testified at the evidentiary hearing that trial counsel had advised him not to testify, but indicated that he could make his final decision at the conclusion of the proof. He stated that trial counsel believed that other witnesses' testimony would substantiate the self-defense theory. According to the petitioner, trial counsel then closed the defense proof without reconsidering the issue of his testifying. The petitioner testified that trial counsel explained afterward that he did so because he believed that the petitioner would be acquitted. The petitioner stated that he was fearful of the victim and killed him in self-defense. He also testified that he did not fire the gun intentionally, but that it discharged accidentally. According to the petitioner, the victim had pointed a gun at him on at least five occasions prior to the altercation that led to the victim's death.

The petitioner also claimed that he had encouraged trial counsel to speak to Grooms and Davis and trial counsel had promised to do so. He testified that the victim had pointed a gun at him on at least five separate occasions and that he had provided trial counsel with the names of witnesses to each of the incidents. The petitioner contended that trial counsel had led him to believe that "he was going to beat this." During cross-examination, the petitioner conceded that trial counsel had called a number of witness who testified about prior altercations. While he was unaware whether the state had actually offered a plea agreement, he claimed that his trial counsel had represented that such a deal was available.

The post-conviction court, accrediting the testimony of trial counsel, concluded that trial counsel's performance was not deficient:

> The evidence and the record clearly show that [trial counsel] thoroughly investigated the case, called all relevant witnesses he was allowed to call, asked all relevant questions . . . and left no stone unturned in his representation of the petitioner.

The post-conviction court also concluded that "[t]he petitioner was advised of his right to testify . . . and [had] personally made an informed decision not to testify."

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the

witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

In this appeal, the petitioner asserts that he was denied the effective assistance of counsel. He claims that his trial counsel was ineffective for failing to fully investigate the case and call certain witnesses. The petitioner also contends that trial counsel prevented him from testifying in his own behalf.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, trial counsel testified that some forty separate witnesses were interviewed during pretrial preparations. He stated that he did not call Davis as a witness because he felt that Davis' testimony, which related to a relatively remote event (some ten years prior to trial), would not have been helpful. It was his opinion that Davis would have been an effective witness. Trial counsel explained that Grooms was not called to testify because there were questions about his credibility.

Our review indicates that trial counsel was able to establish the contentious nature of the relationship between the victim and the petitioner and that the victim was typically the first aggressor. See Cutshaw, No. 03C01-9711-CC-00521 (Tenn. Crim. App., at Knoxville, Nov. 23,

1999). The account provided by Ms. Smelcer established that the victim dove at the petitioner and the gun discharged, killing the victim. Ms. Smelcer's testimony also established that the victim had been looking for the petitioner to continue the fight that began at the Starlite Club. Thomas Cooter, who was with the petitioner on the night of the shooting, testified that although he originally told police that the petitioner went home to get his gun after fighting with the victim at the Starlite, he later realized that the rifle had been in the petitioner's truck throughout the night. He stated that he and the petitioner were on their way to the petitioner's home when they encountered the victim, Ms. Smelcer, and Thomas on Arlie Waddell Road. Cooter recalled telling the petitioner to leave the rifle in the truck. He explained that the petitioner answered that he needed the weapon because the victim had shot at him before. According to Cooter, the petitioner remarked after the shooting that he had no choice but to shoot the victim.

Several witnesses, including those called by both the state and the defense, testified to the contentious nature of the relationship between the petitioner and the victim. Becky Griggs, a defense witness, testified that the victim threatened on a number of occasions to "kill the s-o-b," referring to the petitioner. Janice Partin, another defense witness, recalled that the victim had once tried to use his car to run over the petitioner in the parking lot of the South Greene Market. Jake Albert Reed, the petitioner's uncle, testified that the victim started a violent altercation with the petitioner at a time when the petitioner was unable to defend himself due to injuries sustained in a car accident. Shirley Cutshaw Thomas, the petitioner's mother, testified that she recovered a gun from a ditch where the petitioner and the victim had been fighting outside her home on Arlie Waddell Road.

On direct appeal, this court determined that "[a]lthough the defendant presented testimony to support his claim of self-defense, the State presented evidence to show the defendant did not use deadly force as a result of a reasonable belief he was in imminent danger. We hold that the jury's rejection of the defendant's claim of self-defense and the verdict of guilty of second degree murder are supported by the evidence presented."

The selection of which specific witnesses, among many possible choices, will testify at trial qualifies as a tactical decision. The experience and abilities of trial counsel may be taken into account by the trial judge in assessing the merits of an ineffective assistance claim. Although trial counsel may be questioned for failing to call a witness who could support the defense theory, there is no deficiency in performance when the theory has been established through other witnesses. The defense was not successful because the jury chose to place its emphasis on the events at the time of the shooting, which involved the petitioner's shooting an unarmed victim, rather than the prior altercations. Here, trial counsel stated a basis for choosing some witnesses over others. Under these circumstances, this court cannot say that the evidence preponderates against the judgment of the post-conviction court.

As to the petitioner's second complaint, that he was deprived of the opportunity to testify, it is well established that a criminal defendant has a constitutional right to give testimony under both the state and federal constitutions. See Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). Article I, section 9 of the Tennessee Constitution has been interpreted to require that "in all criminal

prosecutions the accused has the right to testify as a witness in his own behalf and to be represented by counsel." Id. (citing State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976)). In Rock v. Arkansas, 483 U.S. 44, 50 (1987), the United States Supreme Court declared that the right of a criminal defendant to testify in his own behalf was essential to the due process of law. Because the right to testify is fundamental, it may only be waived by the defendant. Momon, 18 S.W.3d at 161 (citing Jones v. Barnes, 463 U.S. 745 (1983); State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998); Vermilye v. State, 754 S.W.2d 82, 88 (Tenn. Crim. App. 1987)).

In Momon, our supreme court held that as a procedural safeguard, the waiver of the defendant's right to testify should be attained through a voir dire of the defendant in open court. Momon, 18 S.W.3d at 162. The court noted, however, that "neither the right to testify discussed herein, nor the procedural protections adopted to preserve that right are new constitutional rules which must be retroactively applied." Id. at 162-63. Moreover, our high court stated that the safeguards announced in Momon were prophylactic in nature and not constitutionally required. Id.

The petitioner's trial occurred in 1997, some two years before the supreme court's decision in Momon. At that time, a voir dire of the defendant regarding the waiver of the right to testify was not required. Prior to the supreme court's holding in Momon, a petitioner's claim that his counsel prevented him from testifying in his own behalf was treated like any other ground asserted for a claim of ineffective assistance of counsel. See, e.g., Shone King v. State, No. 01C01-9709-CR-00408 (Tenn. Crim. App., at Nashville, Dec. 30, 1998).

Here, the trial court accredited the testimony of trial counsel, concluding that the petitioner knowingly and voluntarily agreed to follow counsel's advice against testifying in his own behalf. The petitioner candidly acknowledged that trial counsel explained his right to testify but advised him against taking the stand due to the likelihood that he would be impeached with his prior incriminatory statements. Further, that the petitioner now asserts that the gun accidentally discharged as the victim lunged at him, appears to be inconsistent with the theory of self-defense proposed during the original trial. Obviously, presenting evidence consistent with the theory of defense is a sound trial strategy.

In our view, trial counsel's advice that the petitioner refrain from testifying did not render his performance deficient. Moreover, the petitioner failed to show that counsel unilaterally deprived him of the right to testify. See Gregory Morgan v. State, No. 03C01-9611-CR-00404 (Tenn. Crim. App., at Knoxville, Jan. 15, 1999) (holding that petitioner was not entitled to post-conviction relief where his trial counsel advised him against, but did not prohibit him from, testifying in his own behalf).

Accordingly, the judgment of the trial court is affirmed.

_____

GARY R. WADE, PRESIDING JUDGE