# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 8, 2025

## STATE OF TENNESSEE v. JONNELLA RISHARRA HAMBRICK

**Appeal from the Criminal Court for Davidson County**
**No. 2019-A-304     Angelita B. Dalton, Judge**

_____

### No. M2024-00514-CCA-R3-CD

_____

The Defendant, Jonnella Risharra Hambrick, was convicted by a Davidson County Criminal Court jury of attempted second degree murder, employing a firearm during the commission of a dangerous felony, and two counts of aggravated assault and received an effective twenty-year sentence. On appeal, the Defendant contends that the trial court erred by denying her the right to counsel at the trial and by imposing a sentence without her being present. Because we agree that the Defendant was denied her right to counsel and that she had a constitutional right to be present for sentencing, we reverse the judgments of the trial court and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Daniel J. Murphy (on appeal) and Sean McKinney (at sentencing), Nashville, Tennessee, for the appellant, Jonnella Risharra Hambrick; and Jonnella Risharra Hambrick, Pro Se, (at trial).

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General, Glenn Funk, District Attorney General; and Stiles Ashby, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The Defendant's convictions relate to an altercation on November 17, 2018, during which the Defendant shot the victim multiple times in the arm and chest. Because the Defendant has raised an issue regarding her right to counsel, the history of retained and appointed counsel, as well as her eventual pro se status at her trial, is relevant.

On February 25, 2019, the Davidson County Grand Jury indicted the Defendant for attempted first degree murder, employing a firearm during the commission of a dangerous felony, and two counts of aggravated assault. On March 20, 2019, the trial court determined the Defendant was indigent and appointed original counsel to represent her. At a September 17, 2020 hearing, the Defendant was informed that her previously set trial date had been removed from the docket while the court considered how to proceed in light of the Tennessee Supreme Court's directives regarding the COVID-19 pandemic.[1] Original counsel indicated that the Defendant's daughter was planning to retain counsel, and the court set a status hearing. At an October 27 hearing, original counsel moved to withdraw as counsel because the Defendant would no longer speak with him. The court noted that original counsel had previously filed two other motions to withdraw, and it granted counsel's motion. The Defendant stated that her daughter had spoken to another attorney. The court commented that when the other attorney "came in here, he said he hadn't been paid" and had not been retained. The Defendant said she would talk to her daughter. The court reset the case to determine whether the Defendant had retained counsel.

On November 19, 2020, after the Defendant's family was unable to retain counsel, the trial court appointed second counsel to represent the Defendant. At a July 21, 2021 hearing, the Defendant told the court that second counsel had not worked on her case. Second counsel replied that she and her investigator had been working on the Defendant's case, that the Defendant had demanded she file a motion for a bond reduction, and that the Defendant requested that second counsel file a motion to withdraw. The court informed the Defendant that the court had already ruled on a bond reduction motion and that until the Defendant's circumstances changed, the court would not consider the motion. The Defendant did not make bond and remained in custody throughout the pendency of the case. The court denied second counsel's motion to withdraw and set a status hearing to establish a trial date.

---

[1] On March 13, 2020, the Tennessee Supreme Court suspended in-person court proceedings, which included jury trials, subject to certain exceptions not relevant here. *See In re COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020) (order).

At a September 9, 2021 hearing, second counsel moved to withdraw because the Defendant's family had threatened her, and she was "unable" to talk to the Defendant. The Defendant raised an issue regarding a motion for a speedy trial. The trial court granted second counsel's withdrawal motion and advised the Defendant that "we can't even get to a trial if we can't keep an attorney on your case." The court set another status hearing in a "couple of weeks" for the court to appoint another attorney.

On September 22, 2021, the trial court appointed third counsel to represent the Defendant. On October 27, 2021, and January 19, 2022, the court ordered a forensic evaluation of the Defendant at the request of third counsel. The evaluation determined that the Defendant could adequately assist her attorney and that she could appreciate the nature and wrongfulness of her actions.

At a June 23, 2022 hearing, third counsel advised the trial court that he wished to withdraw, that he had difficulty working with the Defendant, that the Defendant insisted he file frivolous motions, and that the Board of Professional Responsibility recommended he withdraw based upon a communication breakdown with the Defendant. Third counsel offered to serve as advisory counsel if the Defendant proceeded pro se. The Defendant stated that she had asked third counsel to file a motion for a speedy trial but that he refused. The court told the Defendant that it had already ruled on her earlier-filed motion for a speedy trial, that she could refile her motion, and that the court would set it for a hearing. The Defendant informed the court that she had prepared "dismissal motions or suppression motions," including a motion to reveal the identities of grand jurors and a motion for a new preliminary hearing. The trial court granted third counsel's motion to withdraw. The following exchange between the court and the Defendant took place:

> THE COURT: Are you in a position to hire an attorney?
>
> MS. HAMBRICK: I mean, you have me in a position where I really am just
>
> THE COURT: That's not my question.
>
> MS. HAMBRICK: -- disabled to do --
>
> THE COURT: Can you hire an attorney?
>
> MS. HAMBRICK: -- anything.
>
> THE COURT: Okay. I don't have you in a position where you are disabled to do --
>
> MS. HAMBRICK: Seeing as I'm --

-3-

THE COURT: -- anything. You --

MS. HAMBRICK: -- incarcerated, I can't --

THE COURT: -- well, that's --

        . . . .

MS. HAMBRICK: -- I don't have access.

THE COURT: -- that's by your own doing.  Now --

MS. HAMBRICK: I, I haven't done anything.

THE COURT: -- with that said, can you afford to hire an attorney?

MS. HAMBRICK: I don't know. I have to communicate with outside.

THE COURT: Oh.

MS. HAMBRICK: I have outside family that I'm sure can.

THE COURT: Okay. Well communicate --

MS. HAMBRICK: But as far as to communicate with me, I can't, when they're working.

THE COURT: Okay.

MS. HAMBRICK: There is things going on at this facility that is kind of disabling me to be able to do anything.

THE COURT: All right. Well, because [third counsel] was your third appointed attorney.  I am not in a position, because you have the -- you are entitled to have representation --

MS. HAMBRICK: Uh-huh.

THE COURT: -- and if you can't afford one the Court can appoint one to represent you.  The problem is I have done that three times already --

MS. HAMBRICK: Uh-huh.

THE COURT: -- and each time, and every lawyer has come in here and said the exact same thing that [third counsel] has said and that is they cannot proceed with representing you because you are asking them to do things that ethically they cannot do, under that ground, I'm not required to keep appointing you an attorney if we are just going to keep going down this rabbit hole, so if you can afford to hire an attorney, you are more than welcome to hire an attorney. You can represent yourself and I can appoint [third counsel] to represent you as elbow counsel --

MS. HAMBRICK: Uh-huh.

THE COURT: -- but that's going to be my limit. That's my limitation.

. . . .

THE COURT: . . . Ms. Hambrick, if you through communications with your family, if you are able to hire an attorney please do so, otherwise, you will be representing yourself and I will appoint [third counsel] to represent you as elbow counsel.

MS. HAMBRICK: Fine.

At a hearing on July 15, 2022, the following exchange between the trial court and the Defendant took place:

THE COURT: Okay. So we're here, Ms. Jonnella Hambrick filed a pro se motion to dismiss for violation of a speedy trial and she's filed it and in the first sentence says: Now, comes defendant, Jonnella Hambrick, representing self for the motion to dismiss the indictment in violation of the Speedy Trial Act. Now, Ms. Hambrick, you filed this yourself are you going to represent yourself on this motion?

MS. HAMBRICK: Yes, ma'am, I am.

THE COURT: I mean, I appointed you . . . three attorneys I think in the past. How many have I appointed? I think [original counsel], then . . .

MS. HAMBRICK: And neither of them did their job.

THE COURT: That's not what I'm asking. I appointed [original counsel] and then I appointed [second counsel] and then I appointed [third counsel]. Is that about right?

. . . .

THE COURT: All right. And so and each attorney has asked to withdraw from representation for a number of reasons and I think I shared with Ms. Hambrick the last time that we were here . . . .

[T]here comes a point when after I have gone through appointing attorneys that I can't just -- just because they are not getting along or because she and her attorneys are not getting along or if she -- if they are not doing what she wants them to do because they're trying to protect their ethical obligation to the Court to not file motions that they do not deem appropriate, because they have an obligation under the law to not do so and that I believe is what has happened with if I recall, I know that was with [third counsel], there may have been some of the same issues with [second counsel].

There may have been some of the same issues with [original counsel] and so I explained to Ms. Hambrick when we were in Court I guess about a couple of weeks ago that at some point the Court has to draw the line. While Ms. Hambrick has the right to an attorney to represent her there has to be some reasonable measures for her to have a cooperative relationship . . . with her attorneys who is appointed or she is welcome to hire an attorney if she wants to, it makes me no difference, but we were going to just keep going down this rabbit hole of not having any movement in the case. So with that said, Ms. Hambrick, are you representing yourself?

MS. HAMBRICK: Yes, ma'am, I am.

. . . .

THE COURT: Give this [waiver of right to counsel form] to Ms. Hambrick and have her look over that.

MS. HAMBRICK: On every attorney that you assigned to me, I have written complaints to the Board of Professionals on each and every one.

THE COURT: And therein lies the problem, which is why we are here under this circumstance.

MS. HAMBRICK: Yes.

THE COURT: Therein lies that problem. I need you to read that.

COURT OFFICER: I need you to read it over and then when you're done, you can sign it.

MS. HAMBRICK: Okay. (Complying.) Here you go, sir. Thank you.

THE COURT: Okay. Now, Ms. Hambrick –

MS. HAMBRICK: Uh-huh.

THE COURT: -- and just for the record the Court has appointed [third counsel] to serve as elbow counsel only and that is if you have a question for him, you can ask him. He is not presenting [sic] you, but he is willing to answer any question that you may have. Do you understand?

MS. HAMBRICK: Yes.

The trial court entered an order finding that the Defendant "intelligently, knowingly and voluntarily waived" her right to counsel, and Defendant represented herself at the February 6-7, 2023 trial. A jury convicted the Defendant of attempted second degree murder, as a lesser included offense of attempted first degree murder, and the remaining charges. The Defendant filed pro se a motion for judgment of acquittal and a separate motion for release. The court's order of March 21, 2023, denied the motions and rejected the Defendant's claim that the court was not impartial. In its order, the court also found that the Defendant "by her conduct . . . forfeited her right to appointed counsel." The court subsequently appointed third counsel to represent the Defendant at sentencing. After the sentencing hearing, the trial court entered an order sentencing the Defendant to an effective twenty-year sentence. The court appointed appellate counsel to file post-trial motions. The Defendant's amended motion for a new trial contended that the trial court erred by denying her counsel at the trial and by imposing a sentence without the Defendant's being present. The court denied the motion, relying on the findings in its March 21 order. This appeal followed.

On appeal, the Defendant contends that the trial court erred by (1) allowing the Defendant to proceed pro se at the trial because she did not knowingly waive her right to counsel and (2) not having the Defendant present when it imposed her sentence. The

State has not addressed whether the Defendant knowingly waived her right to counsel and argues, instead, that the Defendant implicitly waived her right to counsel. The State also argues that the Defendant waived the issue of her being present for the pronouncement of sentence by failing to object when the court announced its intent to take the matter of sentencing under advisement. In reply, the Defendant contends that she did not implicitly waive her right to counsel, that her conduct did not justify forfeiture of trial counsel, and that she did not waive her right to be present for the imposition of her sentence.

## I.

## Right to Counsel

The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution afford a criminal defendant the right to counsel and, in the alternative, a right to represent oneself. *See Faretta v. California*, 422 U.S. 806, 814-18 (1975); *State v. Hester*, 324 S.W.3d 1, 30 (Tenn. 2010). Because the rights are alternatives to one another, a defendant may assert one but not both. *Id.* In order to exercise the right to represent oneself, a defendant must waive the right to counsel. *Id.*

The requisites of a valid waiver of the right to counsel vary according to the stage of the proceedings. *Id.* In exercising the right to represent oneself at the trial stage, a defendant (1) must make a timely assertion of the right, (2) must be clear and unequivocal in the assertion, and (3) must knowingly and intelligently waive the right to the assistance of counsel. *Id.* at 30-31; *see State v. McCary*, 119 S.W.3d 226, 256 (Tenn. Crim. App. 2003). "[R]epresentation by counsel . . . is the standard, not the exception." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 161 (2000); *Hester*, 324 S.W.3d at 31. As such, a strong presumption exists against the waiver of the right to counsel. *Martinez*, 528 U.S. at 161; *Hester*, 324 S.W.3d at 30; *Lovin v. State*, 286 S.W.3d 275, 287 n.15 (Tenn. 2009). Appellate review of a waiver of the right to counsel is de novo with a presumption of correctness afforded to the trial court's factual findings. *Hester*, 324 S.W.3d at 29-30.

### 1. *Voluntary Waiver of Counsel*

The Defendant contends that she did not knowingly and voluntarily waive her right to counsel. The State has failed to address this issue.

"When an accused desires to proceed pro se, the trial judge must conduct an intensive inquiry as to his ability to represent himself." *Smith v. State*, 987 S.W.2d 871, 875 (Tenn. Crim. App. 1998) (citing *State v. Northington*, 667 S.W.2d 57, 61 (Tenn. 1984)). A waiver of the right to counsel must be "voluntary, knowing, and intelligent."

*State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000) (citations omitted). Before accepting a waiver of counsel, the court shall advise a defendant in open court of the right to counsel and inquire into the defendant's "background, experience, and conduct" and "other appropriate matters." Tenn. R. Crim. P. 44(b). Further, Rule 44(b) requires that a "waiver of counsel shall be in writing." *Id.*

In the present case, on July 15, 2022, the Defendant signed a waiver of right to counsel form, which stated that the trial court "questioned the defendant" and found that "she intelligently, knowingly and voluntarily waived the above rights to an attorney[.]" However, the record does not support the court's finding. The record reflects that the court failed to discuss with the Defendant the waiver of counsel form acknowledgments or inquire into the Defendant's "background, experience, and conduct" pursuant to Tennessee Rule of Criminal Procedure 44(b). Accordingly, upon de novo review, we conclude that the Defendant did not voluntarily and knowingly waive her right to counsel.

2. *Implicit Waiver of Counsel*

The State argues that the Defendant implicitly waived her right to counsel after the trial court warned the Defendant that it would not appoint a fourth counsel because of her behavior and gave her three weeks to retain counsel or proceed pro se. The State asserts that the Defendant implicitly waived her right to counsel when she did not retain counsel, indicated that she would represent herself, and signed a waiver of the right to counsel form. The Defendant contends that she did not implicitly waive her right to counsel.

A defendant may implicitly waive the right to counsel when the defendant "manipulates, abuses, or utilizes the right to delay or disrupt a trial." *Carruthers*, 35 S.W.3d at 547. "[A]n implicit waiver is presumed from the defendant's conduct *after* he has been made aware that his continued misbehavior will result in the dangers and disadvantages of proceeding pro se." *State v. Holmes*, 302 S.W.3d 831, 840 (Tenn. 2010) (emphasis in original). "Essential to implicit waiver . . . is . . . an opportunity for the defendant to avoid the extreme sanction of the loss of the right to counsel." *State v. James Richardson Reece*, No. M2011-01556-CCA-R3-CD, 2013 WL 1089097, at *18 (Tenn. Crim. App. March 14, 2013), *perm. app. denied* (Tenn. June 17, 2013). Although "extensive and detailed warnings" are not necessary, a defendant must be "made aware that his continued misbehavior will result in the dangers and disadvantages of proceeding pro se." *Holmes*, 302 S.W.3d at 840. After being warned by the court, a defendant will implicitly waive his right to counsel if he "persist[s] in his misconduct." *Carruthers*, 35 S.W.3d at 549. Implicit waiver applies equally to indigent and non-indigent defendants. *Id*.

The record reflects that after the trial court permitted third counsel to withdraw, the court admonished the Defendant regarding her refusal to cooperate with appointed counsel. Rather than giving the Defendant the opportunity to discontinue her uncooperative behavior after the appointment of new counsel as required by Tennessee Code Annotated section 40-14-205 (requiring a trial court to immediately appoint another attorney for an indigent defendant when an attorney is permitted to withdraw) or impressing upon the Defendant the perils of proceeding pro se, the court presented her with the choice of either retaining counsel or representing herself at the trial. Although the State asserts that the court "warned" the Defendant that she would implicitly waive her right to counsel if her uncooperative conduct continued, the record reflects that the court had already refused to appoint additional counsel when it gave her the choice of retaining counsel or proceeding pro se. The only way the Defendant could avoid the sanction of representing herself was to retain counsel. We question the likelihood that this was a meaningful option given the Defendant's indigent status, her inability to make bond, and her family's prior inability to retain counsel. Accordingly, the record reflects that the Defendant was not given a meaningful opportunity to correct her behavior while still being represented by appointed counsel and "to avoid the extreme sanction of the loss of the right to counsel." *James Richardson Reece*, 2013 WL 1089097, at *18. We conclude upon de novo review that the Defendant did not implicitly waive her right to counsel.

### 3.     Forfeiture of the Right to Counsel

In a March 21, 2023 post-trial order responding to the Defendant's pro se March 10, 2023 motion for judgment of acquittal, the trial court found that the Defendant forfeited her right to appointed counsel because the Defendant's conduct "so undermined the attorney/client relationships to the point that it appeared that she was manipulating the process resulting in the delay, disruption, and prevention of the orderly progress of proceeding with her case." The Defendant contends that the court erred by finding that her conduct warranted a forfeiture of her right to counsel. The State does not address the forfeiture issue.

A defendant who engages in "extremely serious misconduct" can forfeit the right to counsel even though the trial court did not warn the defendant "of the potential consequences of his or her actions or the risks associated with self-representation." *Carruthers*, 35 S.W.3d at 548. Forfeiture is appropriate "only where a defendant egregiously manipulates the constitutional right to counsel so as to delay, disrupt, or prevent the orderly administration of justice." *Id.* at 550. "Forfeiture is an extreme sanction in response to extreme conduct that imperils the integrity or safety of court proceedings." *State v. Parsons*, 437 S.W.3d 457, 479 (Tenn. Crim. App. 2011). Whether a defendant's conduct justifies a ruling of forfeiture "may generally be determined only after an evidentiary hearing at which the defendant is present and permitted to testify."

*Holmes*, 302 S.W.3d at 838-39. (citations omitted). "The State bears the burden of establishing that the defendant committed such actions as to justify a forfeiture." *Id.* at 839 (citing *Brewer v. Williams*, 430 U.S. 387, 404 (1977)). "A trial court's determination after a hearing that a defendant has behaved in such a manner as to forfeit his constitutional right to legal counsel at trial is a mixed question of law and fact." *Holmes*, 302 S.W.3d at 837. Appellate review is de novo with a presumption of correctness afforded to the trial court's factual findings. *Hester*, 324 S.W.3d at 29-30.

"[A] criminal defendant's constitutional right to the assistance of counsel is so fundamental, particularly at trial, that only the most egregious misbehavior will support a forfeiture of that right without warning and an opportunity to conform his or her conduct to an appropriate standard." *Holmes*, 302 S.W.3d at 846. "[I]t should be utilized only under 'extraordinary circumstances'" and "should be a 'last resort in response to the most grave and deliberate misconduct.'" *Id.* at 847 (quoting *Commonwealth v. Means*, 907 N.E.2d 646, 659-660 (2009)). Our supreme court has set forth the following non-exclusive factors relevant to a trial court's consideration:

> (1) whether the defendant has had more than one appointed counsel; (2) the stage of the proceedings, with forfeiture "rarely . . . applied to deny a defendant representation during trial"; (3) violence or threats of violence against appointed counsel; and (4) measures short of forfeiture have been or will be unavailing.

*Id.*, 302 S.W.3d at 839 (quoting *Means*, 907 N.E.2d at 659-661); *see Parsons*, 437 S.W.3d at 485; *State v. Jerry A. Thigpen*, No. M2019-00047-CCA-R3-CD, 2020 WL 2216205, at *9 (Tenn. Crim. App. May 7, 2020).

As to the first factor, the trial court appointed three successive attorneys to represent the Defendant. Counsel requested to withdraw for reasons that included the Defendant's failure to cooperate, the Defendant's requests to file frivolous pleadings, the Defendant's family's threatening behavior, and the Defendant's desire to have her family retain counsel for her. As to the second factor, the court allowed the Defendant's third counsel to withdraw prior to the trial and refused to appoint a fourth counsel, informing the Defendant that she could retain counsel or represent herself. Because the Defendant could not retain counsel, she represented herself at the trial with the assistance of advisory counsel. Regarding the third factor, second counsel informed the court that the Defendant's family members had threatened her and that she no longer felt safe communicating with the Defendant. The record does not indicate that the Defendant physically threatened appointed counsel. However, in *Parsons*, we noted that a defendant's derogatory allegations against counsel can constitute "acts of violence" against counsel's professional reputation. 437 S.W.3d at 486. In *Parsons,* the defendant's conduct included filing complaints against counsel with the Board of

Professional Responsibility, filing federal and state lawsuits against counsel, filing a police report alleging counsel committed an assault, and filing unsubstantiated and derogatory comments about counsel in court pleadings. Here, the Defendant filed complaints with the Board of Professional Responsibility against all three of her appointed counsel and stated in open court that neither original counsel nor second counsel "did their job" and that second counsel was ineffective. The fourth factor focuses on other measures the court took to avoid forfeiture of counsel. Here, the court took none. The court gave no warning to permit the Defendant to discontinue her uncooperative behavior. After granting third counsel's withdrawal motion, the court gave the Defendant the choice to retain counsel or proceed pro se. The Defendant was indigent, unable to make bond, and her family had been unable to retain counsel. When she failed to retain counsel, the court determined that the Defendant would proceed pro se.

As to the Defendant's conduct, generally, the record reflects that the Defendant moved the trial court to address previously adjudicated matters and filed numerous pro se motions, despite being represented by counsel. The Defendant's refusal to cooperate with her three appointed counsel further delayed judicial proceedings. However, the record reflects that several issues contributed to the almost four-year delay between indictment and the trial other than the Defendant's behavior. These issues included COVID-19 pandemic restrictions, the Defendant's family's unsuccessful attempt to retain counsel, the continuation of pretrial proceedings due to appointed counsel's surgery, and the State's request for a continuance of the October 10, 2022 trial date. The trial's delay was also occasioned by the Defendant's forensic psychological evaluations requested by third counsel and ordered by the court on October 27, 2021, and on January 19, 2022.

Tennessee courts have previously affirmed a trial court's finding that a defendant forfeited the right to counsel in limited cases of extreme pervasive, egregious, and outrageous conduct designed specifically to disrupt and delay the judicial process. In *Carruthers*, our supreme court held that the defendant forfeited his right to counsel because he engaged in a ploy to delay the trial by repeatedly demanding that trial counsel withdraw on the eve of trial and by making "outrageous allegations and threats [that] escalated markedly with each new set of attorneys." 35 S.W.3d 516.

In *Parsons*, this court found that the defendant forfeited his right to counsel as a result of intentional efforts to delay and disrupt "any and all" proceedings, filing a federal lawsuit against the trial judge, filing a police complaint for assault against counsel, threatening to file an additional civil suit against counsel, failing to appear for court dates, obtaining a competing psychological evaluation to manipulate pretrial proceedings, and presenting "inconsistent narratives" to the court to manipulate the judicial process. 437 S.W.3d 457; *see State v. Willis*, 301 S.W.3d 644 (Tenn. Crim. App. July 6, 2009) (holding that the defendant forfeited his right to counsel after he refused to discontinue

-12-

his disruptive behavior despite multiple warnings to do so, refused to work with counsel, refused to participate in a forensic evaluation, and filed a lawsuit against his counsel in federal court and a complaint with the Board of Professional Responsibility), *perm. app. denied* (Tenn. Nov. 23, 2009); *Jerry A. Thigpen*, 2020 WL 2216205 (holding that the defendant, who was represented by appointed counsel at the trial, forfeited his right to appellate counsel as a result of Defendant's refusing to cooperate with appointed counsel, engaging in disruptive trial conduct, and naming trial counsel in a federal civil lawsuit).

We do not condone the Defendant's uncooperative behavior toward appointed counsel and the court system. Nevertheless, the record fails to support the trial court's determination that the Defendant's conduct was so extreme and egregiously manipulative as to delay, disrupt, or prevent the orderly administration of justice and warrant a forfeiture of trial counsel for charges that included attempted first degree murder. Further, the record reflects that the court did not hold an evidentiary hearing to determine whether forfeiture was appropriate. *See Holmes*, 302 S.W.3d at 838-39 (A ruling of forfeiture "may generally be determined only after an evidentiary hearing at which the defendant is present and permitted to testify."). The record reflects that, as there was no "forfeiture of counsel hearing," the first mention by the court of the Defendant's forfeiture of counsel was in the court's order denying the Defendant's motion for judgment of acquittal entered more than nine months after the Defendant was informed by the court that she would not receive another appointed counsel.

In determining that the record does not support the forfeiture of counsel, we are mindful of the *Holmes* factors and our supreme court's admonition that forfeiture of counsel should be a "last resort in response to the most grave and deliberate misconduct" and should rarely be applied to deny a defendant representation during trial. *Id.* at 847, 839. Upon our de novo review, the record does not support the court's determination that the Defendant's actions were so egregious as to justify the forfeiture of trial counsel. The court erred in determining that the Defendant forfeited her fundamental constitutional right to counsel at the trial.

We conclude that the Defendant did not voluntarily waive, implicitly waive, or forfeit her right to counsel. Accordingly, the trial court erred by depriving the Defendant of appointed counsel at the trial. "A trial court's erroneous ruling to deprive a defendant of his fundamental constitutional right to counsel is per se reversible error" requiring that we reverse the Defendant's convictions and remand this matter to the trial court for appointment of new counsel and a new trial. *Id.* at 848. Our decision notwithstanding, the trial court has the authority to control the proceedings in this matter, and nothing in this opinion should be construed to limit the court's ability to find the Defendant has waived or forfeited her right to counsel under the appropriate circumstances, as they may develop in subsequent proceedings.

## Sentencing

Our conclusion that the trial court erred in denying the Defendant her right to counsel is dispositive of this appeal. However, because of the possibility of further review, we will address the remaining sentencing issue. *See State v. Pendergrass*, 13 S.W.3d 389, 395 (Tenn. Crim. App. 1999) (concluding that, despite insufficiency of the evidence to support the defendant's convictions, an intermediate court must, nevertheless, address the merits of the remaining issues).

On March 24, 2023, the trial court held a sentencing hearing at which third counsel represented the Defendant. The court received a presentence report and heard testimony from the Defendant and the Defendant's daughter. The court heard argument addressing enhancing and mitigating factors and the appropriateness of consecutive sentencing. *See* T.C.A. §§ 40-35-113, -35-114, -35-115. At the conclusion of the sentencing hearing, the court indicated that it would take the issues under advisement and "issue a written sentencing memorandum as quickly as possible." The Defendant did not object. On April 12, the court issued a written order imposing an effective twenty-year sentence. The Defendant in her brief says she first became aware of her sentence on June 23, upon being transferred to the Tennessee Department of Correction. The judgments of conviction do not contain the Defendant's or third counsel's signature, nor do they contain a court clerk's certification that copies were made available to the Defendant.

On appeal, the Defendant contends that the trial court erred by not having the Defendant present when it imposed its sentence against her. The State argues that the Defendant waived this issue by failing to object during the sentencing hearing. We agree with the Defendant.

"[T]he right of a criminal defendant to be present at all critical stages of a criminal proceeding derives from several sources, including both the federal and state constitutions" and "is protected by Tennessee Rule of Criminal Procedure 43(a)." *Carruthers*, 35 S.W.3d at 567. Rule 43(a) provides that "[u]nless excused by the court upon defendant's motion or otherwise provided by this rule, the defendant shall be present at . . . the imposition of sentence." Tenn. R. Crim. P. 43(a). "[H]owever, the right to be present may be waived by a criminal defendant." *Carruthers*, 35 S.W.3d at 567. If a defendant waives a constitutional right, it must be knowing and intelligent and made "'with sufficient awareness of the relevant circumstances and likely consequences.'" *State v. King*, 703 S.W.3d 738, 777 (Tenn. Crim. App. 2024) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

This court has recognized "a long-standing presumption against waiver of fundamental constitutional rights." *State v. Richard M. Far, Jr.*, No. M1999-01998-CCA-R3-CD, 2001 WL 208513, at *6 (Tenn. Crim. App. Mar. 1, 2001) (citation omitted). To determine whether a defendant waived the right to be present at any of the critical stages of the trial, the appellate court should consider whether

> (1) the defendant was properly informed of the right to be present, as well as of the consequences of voluntarily waiving this right; and (2) the defendant . . . provide[d] the [trial] court with a written statement or an oral statement on the record attesting to the voluntary waiver of the right to be present.

*Id.* at *7. Thus, this court "will not presume a waiver of important constitutional rights from a silent record." *State v. Blackmon*, 984 S.W.2d 589, 591 (Tenn. 1998) (citation omitted).

The record fails to show that the trial court advised the Defendant of her right to be present at the imposition of her sentence or that the Defendant knowingly and intelligently waived that right. Because we will not presume a waiver from a silent record, the Defendant's failure to object does not constitute a voluntary waiver of the right to be present. *See id.* Accordingly, we hold that the court erred by sentencing the Defendant by written order when the Defendant did not waive her right to be present at the imposition of her sentence.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are reversed. The case is remanded for the appointment of counsel and a new trial.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE